Matter of the **UNITED CORPORATION.**

**Joseph B. Hyman, Appellant in No. 12151, Randolph Phillips, Appellant in Nos. 12157, 12158.**

**Nos. 12151, 12157, 12158.**

United States Court of Appeals
Third Circuit.

Argued May 9, 1957.

Decided Oct. 24, 1957.

Rehearing Denied in Nos. 12151, 12157
Dec. 3, 1957.

Sidney H. Willner, Washington, D. C., for Hyman on the brief.

Randolph Phillips, New York City, pro se (Robert D. Abrahams, Abrahams & Loewenstein, Philadelphia, Pa., on the brief), for Phillips.

Patrick H. Sullivan, New York City, and William S. Potter, Wilmington, Del., for United Corp.

Thomas G. Meeker, Washington, D. C. (Daniel J. McCauley, Jr., Associate General Counsel, Philadelphia, Pa., Ellwood L. Englander, William R. Nowlin, Attorneys, Securities and Exchange Commission, Washington, D. C., on the brief), for Securities and Exchange Com.

Before MARIS, McLAUGHLIN and KALODNER, Circuit Judges.

KALODNER, Circuit Judge.

These appeals are from an Order [1] of the United States District Court for the District of Delaware approving and enforcing an Order [2] of the Securities and Exchange Commission ("Commission") relating to claims for fees and expenses for services rendered in connection with two reorganization plans—the 1944 Ex-

1. October 31, 1956.

2. June 28, 1956. The Commission's opinion and order are reported in S.E.C. Holding Co. Act Release No. 13194.

change Plan and the Investment Company Plan—filed by The United Corporation ("United") pursuant to § 11(e) of the Public Utility Holding Company Act of 1935 ("the Act").[3]

The broad issue presented is whether the District Court erred in its determination, with respect to the allowances made by the Commission in its Order, that the findings of fact and conclusions of law embodied in such Order were (1) adequate, (2) supported by substantial evidence and (3) in accordance with legal standards.

In Appeal No. 12,151, Appellant Joseph B. Hyman ("Hyman"), counsel to the Common Stockholders Group, which was the sole representative of the common stockholders of United, seeks reversal of the District Court's allowance of a $7,000 counsel fee in confirmation of the Commission's Order.

In Appeal No. 12,157, Appellant Randolph Phillips ("Phillips") as a stockholder and as attorney-in-fact for other common stockholders, seeks reversal of an allowance of $50,000 for "fees and expenses" made to him by the District Court in confirmation of the Commission's Order.

In Appeal No. 12,158, Appellant Phillips, "in his own right and as attorney-in-fact for 22,081 stockholders" of United, seeks reversal of allowances totaling $328,500 made to United's counsel and financial advisers by the District Court as per the Commission's Order.

It may be noted parenthetically that the allowances involved in Appeals Nos. 12,151 and 12,158 relate solely to services rendered in connection with the 1949 Investment Company Plan; Appeal No. 12,157 involves fees and expenses claimed by Phillips with relation to both the 1949 Investment Company Plan and the 1944 Exchange Plan and preliminary

and intermediate matters not directly related to either of these plans.

By way of background these facts may be stated:

United, a Delaware corporation, was organized in 1929 and has been, since its organization, exclusively a holding company. In 1938, it registered with the Commission as a public utility holding company under the Act. At that time its capitalization consisted of preference stock, common stock and option warrants. In 1941 United filed a plan with the Commission pursuant to Section 11(e) of the Act designed to comply with Section 11[4] of the Act and ultimately to change United from a holding company to an investment company. Proceedings on this plan were consolidated with proceedings which had been instituted by the Commission pursuant to Section 11 (b) (1) and (2) of the Act, and public hearings were held during 1941 and 1942. The only litigating parties to the consolidated proceeding were the staff of the Commission and United. On August 14, 1943,[5] the Commission issued its Findings, Opinion and Order directing United to change its capitalization to one class of stock, namely common stock, and to take such action as would cause it to cease to be a holding company.

Earlier, in February 1943, Phillips, then owner, directly and indirectly, of 1100 shares of United stock, entered into the picture by beginning a proxy-soliciting campaign in connection with the election of directors at the 1943 annual meeting of United's stockholders. In his proxy letter to stockholders Phillips proposed the ouster of George Howard, president of United for some fourteen years, the election of four new directors, including himself, to the seven-member board of directors, and that United "cooperate with the S.E.C. in working out United's problems under the Holding

---

3. 15 U.S.C.A. § 79k(e) (49 Stat. 838).

4. Section 11 of the Public Utility Holding Company Act of 1935 was enacted for the purpose of simplifying the structure of public utility holding companies to ef-

fect the elimination of concentration of control and of financial mismanagement in the electric utility industry. Loss, Securities Regulation 85–88 (1951).

5. The United Corporation, 13 S.E.C. 854.

Company Act." Phillips obtained proxies covering about 21% of the votes cast, and the management prevailed at the annual meeting. In the instant appeals Phillips contends that he devoted some 500 hours to this proxy fight for which he requests $30.00 an hour ($15,000) and $7,558 in costs.

In January, 1944, United filed with the Commission the 1944 Exchange Plan which proposed the exchange of common stock of the Philadelphia Electric Company for shares of its outstanding preference stock. Following the filing of this plan Phillips conducted a second unsuccessful proxy contest with United management. He contends he devoted some 800 hours to this contest for which he seeks $30.00 an hour ($24,000) and $15,857 in costs.

Phillips appeared in the proceedings before the Commission on the January 1944 Exchange Plan and opposed its approval and suggested various changes. The Exchange Plan was approved by the Commission with certain amendments on November 29, 1944,[6] and was consummated shortly thereafter. On appeal by Phillips the Commission's approval was affirmed,[7] the United States Court of Appeals for the Second Circuit holding that his proposals had no bearing on the approval of the plans.

In 1945 the Commission approved another plan submitted by United providing for a further voluntary surrender of preference stock in exchange for portfolio securities and cash.[8] A petition

for review, filed by Phillips was dismissed upon stipulation.[9]

In January, 1947 United filed an application for modification of certain aspects of the Commission's Order of August 14, 1943. Phillips unsuccessfully opposed the modification which was approved by the Commission.[10]

Phillips waged an unsuccessful proxy fight against United management in connection with its 1947 annual stockholders' meeting. In June, 1947, United filed another Section 11(e) plan providing for the retirement of the balance of its preference stock by the exchange of portfolio securities therefor. Phillips opposed this plan but it was approved by the Commission, after amendment.[11]

In 1948 United filed another plan proposing the distribution to its common stockholders of certain of its portfolio securities. After hearings, in which Phillips participated in opposition, the Commission approved the plan.

Having retired all its preference stock, United, on October 16, 1949, filed its Investment Company Plan. Hearings on the Plan began in January, 1950. It was amended in June, 1950 and again in June, 1951, pursuant to suggestions by the Commission.[12] On June 26, 1951, the Commission approved the amended Plan.[13]

Various appeals by Phillips culminated in final approval of the Commission's action.[14] In the interval Phillips was instrumental in inducing Congress to conduct an investigation of charges against

6. The United Corporation, 17 S.E.C. 404 (1944).

7. Phillips v. S.E.C., 2d Cir., 1946, 153 F.2d 27, certiorari denied 1946, 328 U.S. 860, 66 S.Ct. 1350, 90 L.Ed. 1630.

8. The United Corporation, 19 S.E.C. 190 (1945).

9. Phillips v. S.E.C., 2d Cir. No. 19685.

10. The United Corporation, 25 S.E.C. 259 (1947).

11. The United Corporation, 28 S.E.C. 347 (1948) enforced, D.C.Del.1949, 82 F. Supp. 196.

12. The United Corporation, Holding Company Act Release No. 10614 (1951).

13. The United Corporation, 32 S.E.C. 500 (1951).

14. See Downing v. S.E.C., 1953, 92 U.S. App.D.C. 172, 203 F.2d 611, certiorari denied, 1954, 346 U.S. 930, 74 S.Ct. 319, 98 L.Ed. 422; General Protective Committee, etc. v. S.E.C., 1954, 346 U.S. 521, 74 S.Ct. 261, 98 L.Ed. 339; In re United Corporation, D.C.Del.1955, 128 F.Supp. 725, affirmed 3 Cir., 1956, 232 F. 2d 601, certiorari denied General Protective Committee, etc. v. United Corp., 1956, 352 U.S. 839, 77 S.Ct. 59, 1 L.Ed. 2d 56.

United management and the Commission.[15]

On January 16, 1956, the Commission entered an Order under Section 5(d) of the Act[16] declaring that United has ceased to be a holding company.[17] The following day United registered as an investment company and has, since that date, been subject to the provisions of the Investment Company Act of 1940.[18] Phillips petitioned for review of the Commission's Order of January 16, 1956, because it had not required the ousting of United's management. The petition was dismissed by consent for want of prosecution on April 1, 1957.[19]

During the pendency of the litigation relating to the Commission's approval of the amended Investment Company Plan, hearings were held by a Commission Hearing Examiner, Edward C. Johnson, in January 1955, on applications for allowance of fees and reimbursement of expenses for services in connection with the 1944 Exchange Plan and the Investment Company Plan.

Insofar as these appeals are concerned, the following requests for allowances were made:

Whitman, Ransom &
 Coulson $238,500.00
Burns, Blake & Rich 30,500.00
The First Boston
 Corporation 30,000.00
Franklin Cole & Company 10,000.00
Moody's Investors Service 19,952.29

These applicants, the first two being counsel for United, and the latter three its financial advisers, requested fees for their services rendered in connection with the Investment Company Plan.

Phillips requested fees of $39,000 and expenses of $23,415, previously referred to, in connection with the 1943 proxy fight and the 1944 Exchange Plan, and $249,120 fees and $26,925 expenses for services rendered in 1947–1953 relating to the Investment Company Plan and "watchdog" court activities. The $249,120 fee was found by the Hearing Examiner and the Commission to duplicate the $39,000 fee application and, it may immediately be noted, that the record sustains their determination in this respect.

Hyman, applying for fees as counsel for Phillips and others, requested $36,000 for services in connection with the Investment Company Plan.

The Hearing Examiner filed a Recommended Decision on May 31, 1955, details of which will subsequently be discussed. Exceptions thereto were filed by United, Phillips and Hyman to the recommended allowances to the latter two.

On October 4, 1955, the full Commission heard oral argument. It issued its fee Order, as earlier stated, on June 28, 1956.

Pursuant to the Commission's application under Section 11(e) of the Act for enforcement of its Order, a hearing was held before Chief Judge Leahy of the United States District Court for the District of Delaware on October 9, 1956. He determined that the Commission's Findings of Fact and Conclusions of Law were supported by substantial evidence and were arrived at in accordance with legal standards and his Order, in effect, adopted the Findings and Conclusions of the Commission.

These appeals from the District Court's Order raise different issues with respect to the United group, Phillips and Hyman, and they will be disposed of in that order.

As to Appeal No. 12,158 in which Phillips seeks reversal of allowances made

---

15. See Study of the Securities and Exchange Commission, Report of the Committee on Interstate and Foreign Commerce, House Report No. 2508, 82nd Congress, 2d Session (1952).

16. 15 U.S.C.A. § 79e(d).

17. The United Corporation S.E.C. Holding Company Act Release No. 13088.

18. 54 Stat. 789 et seq. (1940), 15 U.S.C.A. § 80a 1 et seq.

19. Phillips v. S.E.C., 2d Cir. No. 24041 (1956).

to United's counsel and financial advisers:

The firm of Whitman, Ransom & Coulson requested fees in the amount of $238,500 for legal services rendered from October 21, 1949, to September 15, 1954, in connection with the Investment Company Plan. After a review of the application, the type of work done, the amount of work hours consumed, the status of members of the firm involved, the character of work done, and giving weight to the "contractual relationship" between the company and its counsel, the fee requested was recommended for award by the Hearing Examiner. The Commission acted in accord with that recommendation.

John J. Burns, representing the law firm of Burns, Blake & Rich, requested a fee of $30,500 and related expenses for legal services rendered in reference to the Investment Company Plan. After reviewing the services performed by Burns, the Hearing Examiner allowed the requested fee and expenses, but reduced the requested fee by $11,000, the amount of trading profit in United stock accruing to a member of Burns' law firm, resulting in a fee of $19,500. The Commission concluded that in view of the trading profits $18,500 was reasonable compensation for the services rendered.

The First Boston Corporation, Moody's Investors Service and Franklin Cole & Company, United's financial advisory services, respectively requested fees of $30,000, $19,500 and $10,000. These fees were recommended by the Hearing Examiner and approved by the Commission.

■ In urging that the fees awarded to these five applicants were excessive, Phillips contends: (1) the Commission failed to make adequate findings to support its fee awards to United's counsel and financial advisors; (2) the uncontroverted evidence compelled a finding of "unreasonableness" as to most of the advice given to United by its counsel and financial advisors; (3) if we subscribe in Nos. 12,151 and 12,157 to the methods by which the Commission reduced his and Hyman's fees, fairness requires that the same considerations be applied to the reduction of fees awarded United's representatives; (4) the "unconscionable" conduct of United's counsel required reduction of their fees. This latter contention relates to certain conversations alleged to have been had in the presence of counsel between William M. Hickey, president of United in 1943, and members of the Commission, and other alleged incidents of exertion of "private influence" and of "personal provocation". With respect to the "conversations" the Second Circuit has long before settled that issue adversely to Phillips. See Phillips v. S.E.C., 2 Cir., 153 F.2d 27, 32, certiorari denied 1946, 328 U.S. 860, 66 S.Ct. 1350, 90 L.Ed. 1630. That Phillips' charges of impropriety are at this stage of the proceedings only speculative is unquestionable and, that being so, cannot have any effect on the fee awards.

■ Phillips' other contentions misconceive the standards to be applied in fixing allowances for company representatives. The practical differences between company counsel and an intervenor's counsel in a reorganization proceeding preclude any strict standards equally applicable to both. The opinion of the United States Court of Appeals for the 8th Circuit in Standard Gas & Electric Co. v. S.E.C., 212 F.2d 407, certiorari denied 1954, 348 U.S. 831, 75 S. Ct. 52, 99 L.Ed. 655, enunciates the standards for determining compensation for company counsel. It was there stated (212 F.2d at page 412):

"At the outset it should be noted that counsel for the company in reorganization stands in a somewhat different position than counsel for stockholder groups who intervene. Compensability of company counsel is rightly determined by the reasonableness of the proposals they advance, and not primarily by the benefits conferred on the estate. A realistic view must be taken of the attorney-client relationship existing between counsel and company. *The proposals submitted by a company attempting to comply with the provi-*

*sions of the Act are expressions of management regarding company policy. The counsel they employ is a conduit of company policy, and to make his compensation depend upon benefits conferred upon the estate, is placing a burden on him not contemplated by the nature of the relationship.*" (Emphasis supplied.)

■■ The compensability for work performed by company counsel is, as a practical matter, generally conceded unless the circumstances indicate that counsel operated in a manner not contemplated by the Public Utility Holding Company Act. We do not think there were such circumstances here. It is well-settled that as to the value of compensable time, great weight must be given to the agreement between the company and counsel. Standard Gas & Electric Co. v. S.E.C., supra; In re Public Service Corp. of New Jersey, 3 Cir., 211 F.2d 231, certiorari denied United Corp. v. S.E.C., 1954, 348 U.S. 820, 75 S.Ct. 32, 99 L.Ed. 647; In re North American Light & Power Co., 3 Cir., 202 F.2d 638, certiorari denied S.E.C. v. Masterson, 1953, 346 U.S. 818, 74 S.Ct. 30, 98 L.Ed. 345. If the fee requested by responsible company representatives is reasonable, detailed analysis of the fee is not required. Since practical significance must be given to the client-attorney relationship in these proceedings, disqualification of a fee is called for only in those special circumstances where the Act itself is subverted to the desires of individuals to profit by the required reorganization.

■ What has been said above is equally applicable to the suppliers of financial advisory services. Viewing the record, we find there was substantial evidence to support the Commission's fee awards to United's counsel and financial advisors and that they were arrived at in accordance with legal standards.

As to Appeal No. 12,157 in which Phillips seeks reversal of the $50,000 allowance made to him—fees and expenses:

Phillips requested fees in the amount of $249,120 and reimbursement of expenses in the amount of $50,340.00 in connection with his activities in the reorganization of United. His contentions with respect to his allowance require a careful distinction between three separate issues: (1) to what extent was the time spent by Phillips "compensable" time; (2) the dollar value of that "compensable" time; and (3) his allowable expenses.

As to compensable time, in his application Phillips claimed 500 hours in 1943; 800 hours in 1944; and 4,928 hours from 1947 through 1953.[20]

As earlier stated, Phillips' claim for fees and expenses for time expended in 1943 and 1944 relates to his unsuccessful proxy contests in those years and his activities related to the 1944 Exchange Plan. The Commission in 1952 dealt with this aspect of Phillips' activities as it related to his application for fees in connection with a retirement plan filed by United in 1947. At that time the Commission concluded that:[21]

"* * * the record does not establish that the 1943 proxy contest had the claimed effect of promoting management compliance [with the Act], or that the information pointed to in the 1944 solicitation material was of any substantial significance. In any event, we are of the opinion that there is no warrant for charging United in these proceedings with the costs of those solicitations since it is clear that both the 1943 and 1944 proxy contests were conducted by Phillips for the purpose of securing for himself and his nominees places on United's board of direc-

---

20. In the Matter of United Corporation, File No. 54–184–1, Public Utility Holding Company Act of 1935, Application for Fee and Expenses, at page 8 (1954). Phillips claimed a total of 6,228 compensable hours at an hourly rate of $40 for a total claim of $249,120 for services rendered.

21. The United Corporation, 33 S.E.C. 463, 475–476 (1952).

tors, and were not related to the retirement plan in these proceedings.

\* \* \* \* \* \*

"We find no basis for granting Phillips any allowance in these proceedings for his activities in connection with the 1944 plan. They were not only not related to the present proceedings, but consisted entirely of unsuccessful opposition to the 1944 plan on grounds collateral to the merits of the plan and of litigation which served no useful purpose."

The asserted basic reason for the Commission's denial of fees and expenses to Phillips in 1952 was that his efforts in 1943 and 1944 were not in issue in the proceeding affecting the fees allowable with reference to the retirement plan of 1947.[22] The Commission was upon doubtful ground in premising its current opinion upon the language of its 1952 decision. However, there is substantial evidence to support its adherence to the views expressed in 1952 with reference to the 1943 and 1944 proxy contests and its present conclusion "that the time spent and expenditures made by Phillips did not in any way contribute to the 1944 Exchange Plan or the proceedings relating thereto and are not compensable in connection with such proceeding." [23] The Commission's conclusions with respect to Phillips' activities in 1943 and 1944 were in accord with those of the Hearing Examiner.

Elimination of the time and expenses attributable to the 1943 and 1944 activities leaves approximately 5,000 compensable hours and $26,925 expenses claimed as allocable to the 1947 proxy contest and the Investment Company Plan. This amount of time is based upon Phillips' own estimate of compensable hours from 1947 through 1953, and the Hearing Examiner accepted this estimate for purposes of his recommendations. In this connection it must be noted that United in its Exceptions to the Recommended Decision of the Hearing Examiner, filed with the Commission June 29, 1955, stated (p. 2):

"\* \* \* both the Hearing Examiner and *the Corporation have estimated that, of the total time claimed by Mr. Phillips, 5,000 hours are compensable \* \* \*.*" (Emphasis supplied.)

In determining the compensability to Phillips for his time during this period, the Hearing Examiner in his Recommended Decision, reviewed Phillips' claimed contributions resulting from the 1947 proxy contest and from his activities with respect to the Investment Company Plan and concluded (p. 63):

"It is clear, however, that regardless of motives, some of Phillips' services, as above shown, in connection with the 1947 proxy contest and the Investment Company Plan *were of benefit to the estate and its reorganization.*

"After weighing all the claims and counterclaims in respect thereof and on the basis of the record, I find that $50,000 is reasonable compensation to Phillips for his compensable services related to the Investment Company Plan and the 1947 proxy contest and that *expenses related thereto and which have not been successfully challenged by any of the parties hereto are reimbursable in the amount of $26,925*".[24] (Emphasis supplied.)

22. See Judge Leahy's opinion in In re United Corporation, D.C.D.Del.1954, 119 F.Supp. 524, at pages 528–529 and footnotes 19 and 20.

23. S.E.C. Holding Co. Act Release No. 13194 at page 15 (1956). In reference to Phillips' activities during this period, the Second Circuit concluded with respect to Phillips' various suggestions that "they appear designed to secure for [Phillips] that position in company affairs for which he waged a proxy battle only to lose it at the company's annual meeting." 1946, 153 F.2d 27, 32, certiorari denied 1946, 328 U.S. 860, 66 S.Ct. 1350, 90 L.Ed. 1630.

24. Recommended Decision of the Hearing Examiner In the Matter of The United Corporation (File Nos. 54–184, 54–89).

Significantly, the Commission, in its Findings and Opinion on the Exceptions to the Recommended Decision of the Hearing Examiner, stated (p. 18):

> "In summary, although Phillips is not a lawyer and cannot be compensated as such, we find that Phillips' activities in connection with the Investment Company Plan have contributed to a degree to the plan and the proceedings." [25]

Having determined that Phillips had contributed to the reorganization to the extent that compensation must be fixed, the Commission nevertheless rejected his 5,000 hour estimate as the basis for compensable time, and the $6.66 hourly rate suggested by United.

In doing so, and rejecting the $50,000 fee and $26,925 expenses recommended by the Hearing Examiner,[26] the Commission stated (p. 19):[27]

> "* * * * *We are unable to find that Phillips devoted 5,000 hours to compensable services, or even to estimate how much of Phillips' time was so devoted and how much of it was spent on collateral matters,* and we do not agree that either we or the District Court found in the earlier proceedings that Phillips was to be compensated at the rate of $6.66 an hour. We think that Phillips' allowance cannot be fixed by multiplying hours by an hourly rate, but must be determined on an over-all consideration of all the factors mentioned above. With respect to Phillips' disbursements, we cannot agree with hearing examiner's conclusion that they should be allowed in full. *It is impossible from the record to allocate between amounts relating to the plan and amounts which are properly chargeable to Phillips personally,* principally because most of the expenses relate to the 1947 proxy contest, which involved, not only the vote on United's plan for future operations, but also Phillips' unsuc-

cessful efforts to elect his nominees to the board of directors.

> "On the basis of a full review and consideration of the record, we have concluded that Phillips should be allowed $50,000 for all services and expenses, including those related to the 1947 proxy contest. In balancing Phillips' limited contribution against his efforts throughout the proceedings to advance his personal interests, his advocacy of impractical proposals and his persistent harassing tactics, we have had considerable doubts as to whether an allowance to him as large as this is warranted. *However, although we cannot accept the computation by which United arrived at the $50,000 figure, we have considered that,* particularly in light of the fact that Phillips has opposed United's management throughout the proceedings and United has a direct interest in avoiding the payment of any excessive allowance, *its over-all judgment in agreeing to an allowance in that amount is entitled to weight, and that has been one of the factors leading us to our ultimate conclusion."* (Emphasis supplied.)

While all parties concerned and the Hearing Examiner and the Commission concede that some of Phillips' time is compensable, no theory of valuation of that compensable time has been agreed upon. The Commission has rejected all suggested valuations and has reached a figure which obscurely lumps claimed compensation with claimed expenses. The question whether this determination by the Commission meets the requirements of the law applicable to administrative bodies is now before us for determination.

### Scope of Review

█ The Supreme Court has held that the findings of the Commission under Section 11(e) of the Act are not subject

---

**25.** S.E.C. Holding Co. Act Release No. 13194 (1956).

**26.** See Note 24, supra.

**27.** See Note 25, supra.

to re-examination on judicial review unless they are not supported by substantial evidence or were not made in accordance with legal standards. Securities and Exchange Commission v. Central-Illinois Securities Corp., 1949, 338 U.S. 96, 69 S.Ct. 1377, 93 L.Ed. 1836. See also Securities and Exchange Commission v. Chenery Corp., 1947, 332 U.S. 194, 67 S.Ct. 1575, 1760, 91 L.Ed. 1995; Securities and Exchange Commission v. Dumaine, 1 Cir., 1954, 218 F.2d 308, certiorari denied 1955, 349 U.S. 929, 75 S. Ct. 771, 99 L.Ed. 1259; Standard Gas and Electric Co. v. Securities and Exchange Commission, supra; In re Engineers Public Service Co., 3 Cir., 1955, 221 F.2d 708.

■ As a general rule, the Commission's findings should be given much weight in cases of this nature since its intimate knowledge of the whole proceedings is an invaluable guide in determining the value of services and the reasonable need for the incurrence of expenses. In re Electric Power & Light Corp., 2 Cir., 1954, 210 F.2d 585, 591, certiorari denied sub nom. Johnson v. S. E. C., 1954, 348 U.S. 825, 75 S.Ct. 40, 99 L.Ed. 650. A slightly different rule is applicable, however, when, as here, a final determination by an administrative agency *rejects* the findings of a hearing examiner. In Universal Camera Corp. v. National Labor Relations Board, 1951, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456, the Supreme Court stated that the findings of a hearing examiner under the Labor Management Relations Act, 29 U. S.C.A. § 141 et seq., were not as unassailable as a master's and could be reversed by the Labor Board even when not clearly erroneous. At the same time it held that while a reviewing court need not give a trial examiner's findings more weight than they deserve in the light of reason and judicial experience, they should be accorded the relevance that they reasonably command in answering the over-all question whether the evidence supporting the Board's order is substantial. Said the Court (340 U.S. at pages 493–494, 71 S.Ct. at page 467):

"It is therefore difficult to escape the conclusion that the plain language of the statute directs a reviewing court to determine the substantiability of evidence on the record *including the hearing examiner's report.* The conclusion is confirmed by the indications in the legislative history that *enhancement of the status and function of the trial examiner was one of the important purposes of the movement for administrative reform.*" (Emphasis supplied.)

Comparable rules of practice for the National Labor Relations Board[28] and the Securities and Exchange Commission[29] with reference to the advisory nature of the report of a hearing examiner indicate that this rationale is applicable to a reorganization under the provisions of Section 11(e) of the Act. While the findings of the hearing examiner are not as strongly recommended to us as those to which the credibility factor is attached, his practical determination is a guide to our conclusion and should have been given due regard by the Commission. But see Advertising Specialty National Association v. Federal Trade Commission, 1 Cir., 1956, 238 F.2d 108, 113.

■ The Universal Camera doctrine is brought into focus here when considering the detailed findings made by the Hearing Examiner as to Phillips' compensable time, the rate of compensation per hour, and his expenditures requiring reimbursement. These findings were summarily rejected by the Commission in reducing the award in question from $76,295 to $50,000, with no allocation of the reduced sum between compensation for services rendered and reimbursable expenses. In the determination of whether the Commission's Order was supported by substantial evidence, the more specific findings of the Hearing Examiner, rejected by the Commission without the making of any express new findings, are entitled to considerable

28. 29 C.F.R. § 102.45.

29. 17 C.F.R. §§ 201.9(a) (b) (d).

weight. As was said in National Labor Relations Board v. Supreme Bedding & Furniture Mfg. Co., 5 Cir., 1952, 196 F. 2d 997, 998: "The law governing the consideration to be given to findings of examiner and Board, where they are in conflict is equally well settled." There, in reliance on the Universal Camera case, it was found that the recommendations of the examiner were supported by substantial evidence while the findings of the Board were not. Accordingly, the enforcement of the Board Order was denied.

### Findings of the Commission

■ The final order of an administrative agency must include findings and conclusions upon all material issues presented on the record. The reasons or basis for the decision must also be clearly enunciated. This principle is well established in the law and was expressly codified in Section 8(b) of the Administrative Procedure Act.[30] Judicial interpretation of this requirement is legion.

In applying Section 8(b) of the Administrative Procedure Act to a decision of the Federal Maritime Board, we noted, with respect to the conclusion of the Board, that, " * * * it is a generalization which is a great deal wider than that which could be based on the facts specifically found. The parties concerned are entitled to have the reviewing tribunal have something more explicit than this type of generalization." Baltimore & Ohio Railroad Company v. United States, 3 Cir., 1953, 201 F.2d 795, 799. There, the case was remanded for more specific findings and reasons for the conclusions reached. Similarly, in Public Utilities Commission of Connecticut v. Federal Power Commission, 3 Cir., 1953, 205 F.2d 116, 119, we held that " * * * an administrative order must contain *express findings of the basic facts upon which the expressed, ultimate fact must be supported."* citing United

States v. Carolina Freight Carriers Corp., 1942, 315 U.S. 475, 62 S.Ct. 722, 86 L.Ed. 971. (Emphasis supplied.)

To the same effect is Spiegel v. Public Utilities Commission of District of Columbia, 1955, 96 U.S.App.D.C. 307, 226 F.2d 29, certiorari denied sub nom. Capital Transit Co. v. Spiegel, 1955, 350 U.S. 904, 76 S.Ct. 182, 100 L.Ed. 794. In reversing the judgment of the District Court with directions to remand the case to the Commission, the appellate court stated (226 F.2d at page 33): " * * * *the decision of the Commission must be based on a 'suitably complete statement' of its reasons for its conclusions."* (Emphasis supplied.)

Pertinent to the instant case is State Corporation Commission of Kansas v. Federal Power Commission, 8 Cir., 1953, 206 F.2d 690, certiorari denied 1954, 346 U.S. 922, 74 S.Ct. 307, 98 L.Ed. 416. There the Court held that it was unable to arrive at a reasoned conclusion that the rate of return allowed by the Federal Power Commission to a natural gas company was "just and reasonable" from the reported findings. At pages 722–723, of 206 F.2d, the Court observed that

" * * * the Commission has not sufficiently explained why it considers the rate reasonable * * * a mere assertion that the Commission has examined 'all of the available evidence of record on this subject' does not suffice to show this court, on review, that the conclusion of the Commission as to the rate of return is the result of the application of the Commission's expertise and judgment so that we would affirm."

The case was remanded to the Commission with direction to make additional findings and conclusions.

In Capital Transit Co. v. Public Utilities Commission, 1953, 93 U.S.App.D.C. 194, 213 F.2d 176, 187, certiorari denied

---

**30.** 5 U.S.C.A. § 1007(b): " * * * All decisions (including initial, recommended, or tentative decisions) shall become part of the record and include a statement of (1) findings and conclusions, as well as the reasons or basis therefor, upon all the material issues of fact, law, or discretion presented by the record; and (2) the appropriate rule, order, sanction, relief, or the denial thereof."

1954, 348 U.S. 816, 75 S.Ct. 25, 99 L.Ed. 643, the problem was analyzed in a concurring opinion by the Chief Judge as follows:

"[Judicial authority] require[s] a commission in a quasi-judicial proceeding to make *basic finding supported by evidence and ultimate findings which flow rationally from the basic findings*—this in order that the commission shall itself perform the initial function of evaluating the evidence and deciding the issues of fact, and in order that the courts, as reviewing tribunals, can decide whether or not the ultimate decision reached by the commission follows as a matter of law from the facts found as its basis, and also whether or not the facts found have substantial support in the evidence. The 'expertise' of a commission usefully serves it in evaluating the evidence, but that expertise cannot supply evidence and cannot, without findings made upon the critical issues before it, guide a commission to a rational and lawful decision." (Emphasis supplied.)

Cases antedating the Administrative Procedure Act enunciate the same principles. The Supreme Court has long held that complete statements of the grounds of a commission's determination are as necessary as are opinions of lower courts setting forth the reasons on which they base their decisions. Beaumont, Sour Lake and Western Railway Co. v. United States, 1930, 282 U.S. 74, 86, 51 S.Ct. 1, 75 L.Ed. 221. The necessity of basic findings to support an order of an administrative body has likewise been a cornerstone of our administrative law. State of Florida v. United States, 1931, 282 U.S. 194, 215, 51 S.Ct. 119, 75 L.Ed. 291. More recently this rule of law was applied to an order of the Commission approving a plan for reorganization under the Act of 1935. Securities and Exchange Commission v. Chenery, Corp.,

1943, 318 U.S. 80, 63 S.Ct. 454, 87 L.Ed. 626. In directing the Court of Appeals to remand the case to the Commission for further findings, the Court observed that it was immaterial that the Commission might have made findings which would justify its order as an appropriate safeguard of interests which the Act was designed to protect. Such findings were held to be essential to the validity of the order. See Securities and Exchange Commission v. Chenery Corp., 1947, 332 U.S. 194, 67 S.Ct. 1575, 1760, 91 L.Ed. 1995.

Here, with respect to Phillips' allowance, the Commission failed to make the explicit findings required of it by both judicial decision and the Administrative Procedure Act. Specifically, while it rejected the finding of its own Hearing Examiner, as well as United's express concession, that Phillips had devoted 5,000 hours of compensable services, it failed to make any finding with respect to compensable hours, and while it rejected the finding of its Hearing Examiner that Phillips was entitled to reimbursement of $26,925 expenses *"which had not been successfully challenged"*, and United's express concession that Phillips was entitled to $15,000 of the $18,415 which Phillips had allocated to the 1947 proxy contest and $1,700 of the $8,509 expenses which he had expended in the Commission and Court proceedings,[31] it failed to even attempt to determine Phillips' allowable expenses, merely stating, in its opinion " * * * it is impossible from the record to allocate * * * " such expenses.

All that the Commission did, as appears from its Opinion, was to shoot an arrow into the sky and bag a "package" of fee and expenses of $50,000 with no further explanation as to how it arrived at that sum than to say: " * * * although we cannot accept the computation by which United arrived at the $50,000 figure * * * its over-all judgment in agreeing to an allowance in that

---

31. See page 4 "Exceptions of the United Corporation to the Recommended Decision of Hearing Examiner and Brief in Support of Exceptions" filed June 29, 1955 (made part of the record).

amount is entitled to weight, and that has been one of the factors leading us to our ultimate conclusion." Nowhere, in its Opinion did the Commission set forth the basis of its allowance to Phillips or any standard or method of valuation of his services or disbursements.

 That this violates the unequivocal mandate of the law is clear. As to every material issue presented, an administrative agency must make findings of fact. Further, where the agency fails to adopt the findings of the hearing examiner, the Act requires the agency to make a finding or ruling on each exception taken to the intermediate report.[32] The Order of the Commission here fails to meet these standards. A bare conclusion is insufficient even when prefaced by a statement that it was reached after careful consideration of all the evidence,[33] as here.[34] Strikingly applicable here is the much-quoted statement of Justice Cardozo that "[W]e must know what a decision means before the duty becomes ours to say whether it is right or wrong."[35]

In view of the foregoing we are constrained to find that the Commission's Order is not supported by substantial evidence and was not made in accordance with applicable legal standards and that the District Court erred in ruling to the contrary and in enforcing the Commission's Order.

 Further, we are of the opinion that the record demonstrates, as the Hearing Examiner found, and United conceded, that Phillips devoted 5,000 hours of compensable services and he is entitled to and should be paid compensation for those hours in the sum of $50,-000.

We are also satisfied that the record amply supports the finding of the Hear-ing Examiner that Phillips' expenses were reimbursable to the extent of $26,-925 and accordingly determine they should be paid to him.

The conclusions stated are dispositive of Phillips' contention that he was entitled to a fee of $249,120 for his services in connection with the 1947 proxy contest, the 1949 Investment Company Plan and matters relating thereto, and his "watch-dog" court services during 1951-53.

We do not deem it necessary, because we consider it to be without merit, to discuss the contention made by Phillips in his appeal as to the "disparity" between the basis of compensation per hour allowed to him by the Hearing Examiner and that allowed to counsel for United. Phillips' contention as to procedural flaws in the District Court is captious and utterly without basis.

As to Appeal No. 12,151 in which Hyman seeks reversal of the $7,000 fee allowance made to him by the Commission and confirmed by the District Court:

Hyman requested a fee of $36,000 in payment of 1,200 hours devoted to matters concerning the Investment Company Plan. The Hearing Examiner awarded him $12,000; the Commission reduced that award to $7,000.

Hyman, as earlier stated, was counsel to the Common Stockholders Group which was the sole representative of some 22,000 stockholders of United. He acted as counsel to Phillips in the latter's capacity as "attorney-in-fact" for the Common Stockholders Group between 1949 and 1953.

The Hearing Examiner found that Hyman "took part in the Commission's hearing [on the Investment Company Plan], in the oral argument to the Commission and, in related actions, in the

32. 5 U.S.C.A. § 1007(b); National Labor Relations Board v. State Center Warehouse and Cold Storage Co., 9 Cir., 1951, 193 F.2d 156, 158.

33. State Corporation Commission of Kansas v. Federal Power Commission, 8 Cir., 1953, 206 F.2d 690, 723, certiorari de-nied 1954, 346 U.S. 922, 74 S.Ct. 307, 98 L.Ed. 416.

34. See Note 25, supra.

35. United States v. Chicago, Milwaukee, St. Paul & Pacific R. Co., 1935, 294 U.S. 499, 511, 55 S.Ct. 462, 467, 79 L.Ed. 1023.

United States Court of Appeals for the District of Columbia, in the United States Court of Appeals for the Second Circuit and in the Supreme Court of the United States. * * * As to the character of services rendered by Hyman, the transcript of the record, consisting of about 4,600 pages excluding the pages devoted to oral argument before the Commission, indicates that Hyman was in attendance with Phillips during the hearings on United's plans. * * * he was the only attorney who participated and asserted a position on the part of the common stockholders * * * [his] efforts played a part in the development and the effectuation of the Investment Company Plan."

The Commission made these findings with respect to Hyman: "His participation in the proceedings extended from the fall of 1949 to May 1951 and subsequent to January 1953. He attended the hearings, argued before the Commission and participated in some, but not all, of the court proceedings related to the plan. * * * Hyman worked very closely with Phillips. * * * They [Phillips and Hyman] collaborated in the preparations of briefs, motions and other papers."

The Commission made no finding with respect to the number of compensable hours devoted by Hyman, merely noting that "Hyman states that he devoted 1,200 hours to the proceedings and requests compensation for services in the amount of $36,000." With respect to the allowance which it made to Hyman it merely stated: "[he] participated on behalf of common stockholders through most of the rather lengthy proceedings and we think he is entitled to modest compensation for such participation. We conclude that an allowance of $7,000 to Hyman will provide fair and reasonable compensation."

■ What has been said with reference to the Commission's failure to make required findings in its allowance to Phillips is equally applicable to Hy-

man. The Commission's Opinion merely stated a "bare conclusion" and made no specific findings with reference to the number of his compensable hours or hourly rate of compensation.

We are of the opinion that there is no substantial evidence to support the Commission's Order and that it was not in accordance with applicable legal standards and the District Court erred in ruling to the contrary and in enforcing the Commission's Order.

We further find that, as the Hearing Examiner found, Hyman devoted 1,200 compensable hours to United's reorganization and that he is entitled to compensation of $12,000 for his services.

It will be noted that considerable weight has been accorded, both in Nos. 12,151 and 12,157 to the findings of the Hearing Examiner in reaching our determination as to allowable fees and reimbursement of expenses. On that score what was said in National Labor Relations Board v. Supreme Bedding & Furniture Mfg. Co., supra, 196 F.2d at page 998, is particularly pertinent here:

"A careful reading of the Board's appendix, findings and brief, and a comparison of its decision with the carefully stated, thoughtfully worked out, and thoroughly impartial report of the examiner, convinces us * * * that it is the Board's decision, and not the examiner's report, which exhibits judicial lacks. It is, we think, in the examiner's rather than the Board's findings that the result of an impartial, a judicial approach to, and decision of, the questions involved is to be found."[36]

Anent the foregoing, as earlier stated, the Supreme Court pointed out in Universal Camera Corp. v. National Labor Relations Board, supra, 340 U.S. at page 494, 71 S.Ct. at page 467, that the legislative history of the Administrative Procedure Act indicates " * * * that enhancement of the status and function of the trial examiner was one of the impor-

---

36. See also National Labor Relations Board v. Universal Camera Corp., 2 Cir., 1951, 190 F.2d 429, 431, where the Court gave "weight to the examiner's findings."

tant purposes of the movement for administrative reform."

The case books are replete with instances in which counsel fees and expenses have been allowed after their denial by the Commission in Section 11(e) proceedings, or substantially increased. In In re Engineers Public Service Company, supra, we affirmed the action of the District Court in allowing fees and expenses to counsel for dissenting stockholders after their disallowance by the Securities and Exchange Commission. In In re Public Service Corp. of New Jersey, supra, where there was a petition to this Court for review of an order of the Securities and Exchange Commission reducing attorneys' fees for services in Section 11(e) proceedings, we reversed the Commission's order and increased the fee. In Standard Gas & Electric Co. v. Securities and Exchange Commission, supra, the District Court's allowance of counsel fees and expenses in reversal of the Commission's order was affirmed.

It may be noted parenthetically that it is well-settled that " * * * appellate courts * * * are themselves experts as to the reasonableness of fees, and may, in the interest of justice, fix the fees of counsel * * *." Mercantile-Commerce Bank & Trust Co. v. Southeast Arkansas Levee District, 8 Cir., 1939, 106 F.2d 966, 973; Columbian Nat. Life Ins. Co. v. Keyes, 8 Cir., 1943, 138 F.2d 382, 385, certiorari denied, 1944, 321 U.S. 765, 64 S.Ct. 521, 88 L.Ed. 1061; Dumas v. King, 8 Cir., 1946, 157 F.2d 463, 466.

There remains only this to be said. The parties did not discuss nor raise the issue as to whether this Court may fix fees and expenses without directing remand to the Commission to do so, and thus cut the Gordian knot of this already too protracted litigation in the interest of justice.

 It is unquestioned that district courts can fix allowances for fees and expenses where there is application to them by the Commission for an enforcement order or that appellate courts can

do so in instances where petitions for review are made directly to them by an aggrieved party under Section 24(a) of the Public Utility Holding Company Act.[37]

We are of the opinion that appellate courts may unquestionably fix allowance of fees and expenses in appeals arising from the action of the district courts.

Section 2106, Title 28 U.S.C. is dispositive. It provides as follows:

"The Supreme Court or any other court of appellate jurisdiction may affirm, modify, vacate, set aside or reverse any judgment, decree, or order of a court lawfully brought before it for review, and may remand the cause and direct the entry of such appropriate judgment, decree, or order, or require such further proceedings to be had as may be just under the circumstances."

For the reasons stated No. 12,158 will be affirmed and Nos. 12,151 and 12,157 will be reversed and remanded to the District Court with directions to proceed in accordance with this Opinion.

---

37. Section 79x(a), Title 15 U.S.C.A.