**BETHLEHEM STEEL CORPORATION, Petitioner,**

v.

**OCCUPATIONAL SAFETY AND HEALTH REVIEW COMMISSION and F. Ray Marshall, Secretary of Labor, Respondents.**

No. 78–2337.

United States Court of Appeals, Third Circuit.

Argued July 12, 1979.

Decided Oct. 24, 1979.

Dennis V. Brenan (argued), Morgan, Lewis & Bockius, Philadelphia, Pa., for petitioner.

Carin A. Clauss, Benjamin W. Mintz, Allen H. Feldman, Rita E. Seeligson (argued), U. S. Dept. of Labor, Washington, D. C., Marshall H. Harris, U. S. Dept. of Labor, Philadelphia, Pa., for respondents.

Before ADAMS, ROSENN, and HIGGINBOTHAM, Circuit Judges.

## OPINION OF THE COURT

ROSENN, Circuit Judge.

This case presents for our review an order of the Occupational Safety and Health Review Commission (OSHRC) finding Bethlehem Steel Corporation (Bethlehem) to be in serious violation of regulations governing exposure of welders to fluoride compounds and employer responsibility to supply adequate ventilation for welding in confined spaces. The Administrative Law Judge (ALJ) held Bethlehem to be in violation and his decision became the final order of the Commission when OSHRC declined review. Bethlehem petitioned this court for review pursuant to 29 U.S.C. § 660(a). The petition for review will be granted and the order of the Commission will be vacated and the cause remanded.

## I.

The proceedings before us arise from an Occupational Safety and Health Act (OSHA) inspection of Bethlehem Steel's shipyard facility at Sparrow Point, Maryland on April 28, 1977. On this date, government inspectors tested Dennis Hancock, a welder, for exposure to toxic fluorides released in the welding process. Hancock was engaged in welding a unit to be installed in a seagoing liquified natural gas tanker. The area (pocket) in which he was working was triangular shaped and located off a passageway of the unit. The floor was rectangular, approximately seven feet by six feet. The walls sloped upward to form a triangle with the ceiling only six inches by about seven feet rectangularly. It was described as basically a triangle in cross-section. The room was about ten feet high and had a small entryway, approximately fifteen by twenty-three inches.

The welding process caused fluoride particulars to be released into the air from the calcium fluorspar rods used in arc welding. The fluoride particles appeared as a bluish-gray smokey haze. Fluoride contaminants can be highly toxic and prolonged exposure to excessive levels of fluorides may result in serious injuries, even death. On the day of the OSHA inspection, Hancock was supplied by Bethlehem with two mechanical blowers to dissipate the smoke and fumes in his work area. Hancock also wore protective gear consisting of a welding shield, a welding jacket, and a Wilson 1200 mechanical respirator that filtered out some of the fluoride particles.

The OSHA inspectors performed a test to determine whether Bethlehem's welders were being exposed to excessive quantities of fluorides. The test involved the attachment of a sampling pump to Hancock's belt with a cassette containing sampling filters clipped to his collar. The parties dispute the accuracy of the test, Bethlehem claiming that the filters were not placed within Hancock's "breathing zone." The Government's test revealed that Hancock was exposed to a concentration of airborne fluorides measuring 5.3 mg./M$^3$ for an eight-hour time-weighted average, which is in excess of the permissible exposure level under OSHA regulations.[1] Hancock, although testifying that the smoke and fumes did not bother him, nevertheless discharged black nasal mucus at the end of the day indicating exposure to fluoride contaminants.

Based on its April 28, 1977, inspection and test results, OSHRC issued a citation on June 2, 1977, charging Bethlehem with a serious violation of 29 C.F.R. § 1910.-1000(a)(2) (1978), which governs employee exposure to fluoride compounds. Bethlehem contested the citation pursuant to 29 C.F.R. § 659. OSHRC then filed a complaint formally charging Bethlehem with the section 1910.1000(a)(2) violation. In the same complaint, OSHRC additionally charged Bethlehem with serious violations of 29 C.F.R. § 1910.1000(e) (1978),[2] and in the alternative, 29 C.F.R. § 1916.31(a) and (b) (1978) or 29 C.F.R. § 1916.57(e) (1978).[3] OSHRC subsequently amended the complaint on September 13, 1977, to substitute an alleged serious violation of 29 C.F.R. § 1910.252(f)(4) and (f)(5) (1978)[4] for the original charge of sections 1910.1000(a) and (e) violations. The amended complaint re-

---

1. The permissible level is 2.5 mg./M$^3$. 29 C.F.R. § 1910.1000(a)(2); Table Z–1 at 638 (1978). All C.F.R. citations are to the 1978 regulations which are identical to the 1977 regulations involved in this case.

2. 29 C.F.R. § 1910.1000(e) (1978) requires employers to determine and implement engineering controls to achieve compliance with the regulations. If controls are not feasible to achieve full compliance, the employer must provide protective equipment or other protective measures in order to achieve compliance.

3. 29 C.F.R. § 1916 (1978) sets forth specific safety and health standards for the shipbuilding industry. Section 1916.31(a) sets up mechanical ventilation procedures and § 1916.31(b) specifically applies to ventilation for welders. Section 1916.57(e) requires employers to provide personal protective equipment to protect against safety hazards.

4. 29 C.F.R. § 1910.252(f)(4) sets forth ventilation requirements for welders working in confined spaces and § 1910.252(f)(5) governs ventilation when fluoride compounds are used.

tained the sections 1916.31 and 1916.57 allegations brought in the original complaint.

The ALJ found Bethlehem to be in serious violation of section 1910.1000(a)(2) notwithstanding OSHRC's withdrawal of this charge in the amended complaint. The ALJ also held Bethlehem to be in serious violation of section 1910.252(f)(4) and (f)(5) as well as section 1916.31(a) and (b). The charge under section 1916.57(e) was vacated. Bethlehem was fined $700 for the violations.

## II.

■ Bethlehem initially argues in its petition for review that the ALJ erroneously concluded that it had violated section 1910.1000(a)(2) because OSHRC withdrew that charge in its amended complaint. OSHRC originally brought its charges against Bethlehem under the general industry standards in 29 C.F.R. § 1910. Bethlehem, however, was engaged in the shipbuilding industry to which specific regulations apply under 29 C.F.R. § 1916. OSHRC determined that it would be more appropriate to proceed under the maritime/shipbuilding industry standards in section 1916 in accordance with the principle that more specific standards apply over general standards. *Secretary of Labor v. C. L. Cook*, 5 OSHC 1628 (1977).

Consequently, the original section 1910.-1000(a)(2) and section 1910.1000(e) charges were withdrawn and section 1916.31(a) and (b) allegations substituted in their place.

The ALJ nonetheless held Bethlehem to be in violation of the withdrawn section 1910.1000(a)(2) charge, and section 1910.-252(f)(4) and (f)(5) (general industry ventilation standards) and the maritime ventilation standards under section 1916.31(a) and (b). In view of OSHRC's withdrawal of the charge under section 1910.1000(a)(2) we vacate that portion of the ALJ's order holding Bethlehem to be in violation of it. This leaves the section 1916.31(a) and (b) and section 1910.252(f)(4) and (f)(5) allegations for our consideration.

## III.

Bethlehem was charged with "serious" violations of sections 1916.31(a) and (b) and 1910.252(f)(4) and (f)(5). Both require employers to provide adequate ventilation to prevent accumulation of toxic smoke and fumes when welding is performed in a confined space. The former standards, however, apply to ventilation in the maritime industry, whereas the latter, apply to industry in general.[5] Our threshold inquiry must be whether Bethlehem's alleged noncompli-

---

5. 29 C.F.R. § 1916.31 (1978) provides:

(a) *Mechanical ventilation; requirements.* (1) For purposes of this section, mechanical ventilation shall meet the following requirements:

(i) Mechanical ventilation shall consist of either general mechanical ventilation systems or local exhaust systems.

(ii) General mechanical ventilation shall be of sufficient capacity and so arranged as to produce the number of air changes necessary to maintain welding fumes and smoke within safe limits.

(iii) Local exhaust ventilation shall consist of freely movable hoods intended to be placed by the welder or burner as close as practicable to the work. This system shall be of sufficient capacity and so arranged as to remove fumes and smoke at the source and keep the concentration of them in the breathing zone within safe limits.

(iv) Contaminated air exhausted from a working space shall be discharged into the open air or otherwise clear of the source of intake air.

*     *     *     *     *     *

(b) *Welding, cutting and heating in confined spaces.* (1) Except as provided in paragraphs (b)(3) and (c)(2) of this section, either general mechanical or local exhaust ventilation meeting the requirements of paragraph (a) of this section shall be provided whenever welding, cutting or heating is performed in a confined space.

29 C.F.R. § 1910.252(f) (1978) provides:

(4) *Ventilation in confined spaces*—(i) *Air replacement.* All welding and cutting operations carried on in confined spaces shall be adequately ventilated to prevent the accumulation of toxic materials or possible oxygen deficiency. . . .

*     *     *     *     *     *

(5) *Fluorine compounds*—(i) *General.* In confined spaces, welding or cutting involving fluxes, coverings, or other materials which contain fluorine compounds shall be done in accordance with paragraph (f)(4) of this section . . . . .

ance may be deemed "serious," for we need not reach the question of whether the substantive requirements of the standards were violated if such violations may not be characterized as serious.[6]

■ To prove a serious violation of the Act, the Government must show:

[A] substantial probability that death or serious physical harm could result from a condition which exists, or from one or more practices, means, methods, operations, or processes which have been adopted or are in use, in such place of employment unless the employer did not, and could not with the exercise of reasonable diligence, know of the presence of the violation.

29 U.S.C. § 666(j).

This statute has been interpreted to mean that when the violation of a regulation makes the occurrence of an accident with a substantial probability of death or serious physical harm possible, the employer has committed a serious violation of the regulation. *Usery v. Hermitage Concrete Pipe Co.*, 584 F.2d 127, 132 (6th Cir. 1978); *California Stevedore and Ballast Co. v. OSHRC*, 517 F.2d 986, 988 (9th Cir. 1975). The accident itself need only be possible, not probable. The probability requirement in the statute of death or serious physical injury makes it unnecessary for the Government to show that actual injury did in fact occur. Bethlehem argues that no charge of a serious violation may be sustained because (1) the ALJ's findings of fact are insufficient to support such a conclusion and (2) there is no substantial evidence in the record indicating that Hancock's possible exposure to fluorides created a substantial probability of death or serious physical harm.

■ Bethlehem attacks the adequacy of the ALJ's findings regarding the alleged serious violation of section 1916.31 because the ALJ nowhere relates the evidentiary basis upon which a serious violation might be found. Bethlehem complains that the ALJ's findings of fact do not specify how

and why a substantial probability of death or bodily harm existed from inadequate ventilation in Hancock's workspace on the day of the OSHA inspection. Bethlehem argues that the ALJ's findings fail to meet the minimum standards required by the Administrative Procedure Act. We agree.

The Administrative Procedure Act provides in relevant part:

All decisions, including initial . . . decisions, are a part of the record and shall include a statement of—

(A) Findings and conclusions, and the reasons or basis therefor, on all the material issues of fact, law, or discretion presented on the record . . . ..

5 U.S.C. § 557(c).

We have held in *In re United Corp.*, 249 F.2d 168, 179 (3d Cir. 1957):

The final order of an administrative agency must include findings and conclusions upon all material issues presented on the record. The reasons or basis for the decision must also be clearly enunciated.

OSHRC itself has held that "[the ALJ's] decision must show on its face what evidence has been considered in reaching his findings and conclusions." *P & Z Company, Inc.*, 6 OSHC 1189, 1191 (1977). The Commission has further indicated that the findings of fact must include a determination of credibility where conflicting testimony is present. *Evansville Materials, Inc.*, 3 OSHC 1741, 1742 (1975).

At a minimum, the ALJ's findings in this case should have indicated the evidentiary basis for his conclusion that the possible accumulation of excess fumes and smoke due to inadequate ventilation in Hancock's workspace created a substantial probability of death or serious physical injury to him, and that Bethlehem with reasonable diligence could have known of the violation. Yet, examination of the ALJ's decision reveals that absolutely no findings were made with respect to the alleged seriousness of the violation. The ALJ simply concluded that the violation was serious.

---

6. We note that Bethlehem vigorously contests the ALJ's conclusion that it had violated § 1916.31(a) and (b) and § 1910.252(f)(4) and (f)(5).

We believe that the ALJ's findings do not comport with the minimum requirements of the Administrative Procedure Act. The importance of an adequate explanatory decision by the ALJ for appellate review cannot be overstressed. OSHRC has itself indicated that "[l]ittle assistance is given . . .. unless the Judge issues a thorough and fully explained decision. The Commission must know what a Judge's decision means before we can say whether it is right or wrong." *P & Z Company, Inc., supra,* 6 OSHC at 1193. No less is required when the court of appeals is asked to exercise its power of review. *Citizen's Association of Georgetown, Inc. v. Zoning Commission of D. C.,* 155 U.S.App.D.C. 233, 239, 477 F.2d 402, 408 (D.C.Cir.1973). We can discern no factual basis from the ALJ's decision for his conclusion that Bethlehem was in serious violation of section 1916.31(a) and (b) and section 1910.252(f)(4) and (f)(5), and we hold that the ALJ's findings of fact are inadequate to sustain the Government's charges.

■ Although the proper procedure would ordinarily be to vacate the ALJ's decision and remand for further fact-finding, Bethlehem argues that such a remand is unnecessary because no substantial evidence exists in the record to support a finding of a serious violation. In Bethlehem's view, the Government was required to show that Hancock's isolated exposure to fluoride contaminants on the day of the OSHA inspection constituted a serious violation within the meaning of the Act. Bethlehem submits that there is no evidence in the record to support such a finding. But the pertinent provisions of the amended complaint allege only that the inspection conducted on April 28, 1977, "disclosed that Respondent was in serious violation" of the Act. Inasmuch as the ALJ did not address himself to this question, we will remand the case so that OSHRC may allow the ALJ to determine whether the allegations in the complaint may be read to permit the Government to introduce evidence concerning the company's practices prior to the date of the inspection, to consider whether Hancock's activities prior to the date of inspection may have warranted a finding that the conduct in issue constituted a serious violation, and to make any further findings of fact that may be appropriate under the circumstances. Our disposition of these matters renders it inappropriate at this time for us to resolve the remaining issues raised by Bethlehem's appeal.[7]

Accordingly, the petition for review will be granted and the order of the Occupational Safety and Health Review Commission will be vacated and the cause will be remanded for proceedings not inconsistent with this opinion. Each side to bear its own costs.

A. LEON HIGGINBOTHAM, Jr., Circuit Judge, concurring.

I join in the opinion of the majority. I recognize that there is a need for further, more explicit findings by the Administrative Law Judge. However, I am confident that as a matter of law the allegations of the amended complaint are sufficiently broad to permit the government to introduce evidence concerning the company's practices *prior* to the date of the inspection, and for the Administrative Law Judge to consider the activities prior to the date of the inspection in order to ascertain whether the conduct on April 28 was a serious violation under 29 U.S.C. § 666(j).

**7.** Bethlehem argues, *inter alia,* that section 1916.31(a) and (b) is unconstitutionally vague, that OSHRC failed to issue the citation with reasonable promptness and that OSHRC conducted an illegal warrantless search of its premises.