## GENERAL PROTECTIVE COMMITTEE FOR THE HOLDERS OF OPTION WARRANTS OF THE UNITED CORPORATION *v.* SECURITIES AND EXCHANGE COMMISSION ET AL.

No. 184. Argued December 2, 1953.—Decided January 4, 1954.

*John Mulford* argued the cause for petitioner. With him on the brief were *Henry S. Drinker, Thomas Reath* and *M. Quinn Shaughnessy.*

*William H. Timbers* argued the cause for the Securities and Exchange Commission, respondent. With him on the brief were *Acting Solicitor General Stern* and *Alexander Cohen.*

*Richard Joyce Smith* argued the cause and filed a brief for the United Corporation, respondent.

Randolph Phillips, respondent, argued the cause *pro se. Joseph B. Hyman* was with him on the brief for Downing et al., respondents.

MR. JUSTICE DOUGLAS delivered the opinion of the Court.

The United Corporation is a holding company registered under the Public Utility Holding Company Act of 1935, 49 Stat. 803, 15 U. S. C. § 79 *et seq.* Section 11 (b) of that Act requires each holding company, with exceptions not material here, to limit the operations of the holding-company system of which it is a part to a single integrated public-utility system and to businesses reasonably incidental or economically necessary or appropriate to that system. Section 11 (e) allows a registered holding company to submit a plan to the Commission which will enable it to comply with § 11 (b).

United controlled, directly or indirectly, various gas and electric utility companies in the East. It submitted a plan to the Commission which, it claimed, would complete its compliance with § 11 (b). The Commission rejected United's plan. 13 S. E. C. 854, 898–899. The Commission, however, withheld issuance of a dissolution order so as to afford United an opportunity to comply with the Act by divesting itself of control over its subsidiaries and by transforming itself into an investment

company.  *Id.,* p. 899.  The Commission accordingly directed that United cease to be a holding company and limit its corporate structure to a single class of stock, namely, common stock.[1]

No review of that order was sought.  Thereafter United retired its preference stock by exchanging it for underlying portfolio securities and for cash.  Other portfolio securities were disposed of through market sales and dividend distributions.

As of December 31, 1950, United had outstanding 14,529,491.5 shares of common stock, and option warrants entitling the holders to purchase 3,732,059 shares of common stock at any time at a price of $27.50 per share.  As of December 31, 1950, United's assets consisted approximately of $57,000,000 of securities and $2,000,000 in cash and government bonds, which was equivalent to $4.12 per share of common stock.  The securities, which consisted of common stocks of utility operating and holding companies, included 11.9 percent of the voting stock of Niagara Mohawk Power Corp., 28.3 percent of South Jersey Gas Co., 5.8 percent of the United Gas Improvement Co., 5.5 percent of the Columbia Gas System, Inc., and voting stocks of other companies in amounts less than 5 percent of the total outstanding.

United submitted a further plan which provided in essential part as follows:

*First.* The sale by United of all of its South Jersey common stock and of sufficient amounts of its stockholdings in the other utility companies so that within one year its resultant holdings would not exceed 4.9 percent of the voting stock of any of those companies.

---

[1] Section 11 (b) places on the Commission the duty to require registered holding companies and their subsidiaries not only to limit, with specified exceptions, their operations to a single integrated public-utility system but also to simplify their capital structures.

*Second.* An offer to United's stockholders who wanted to withdraw from the company. Holders of 100 or more shares of United's common stock were offered common stock of Niagara Mohawk that United had in its portfolio; holders of smaller blocks of United's common stock were offered cash. These offers were on a *voluntary* basis.

*Third.* Cancellation of the option warrants without any compensation to the holders.

*Fourth.* Amendments to the charter and bylaws of United (without a vote of stockholders) to provide for cumulative voting in the election of directors and a 50 percent quorum at stockholders meetings.

The Commission approved the plan with modifications not material to the issues presented in this case. Holding Company Act Releases Nos. 10614, 10643.

*First.* The method of transforming United from a holding company into an investment company was approved.

*Second.* Offers to those stockholders who wanted to withdraw from the enterprise were held to be fair both to them and to those who chose to remain as investors in United.

*Third.* The holders of the option warrants were denied any participation in the reorganization on the ground that there was no reasonable expectation that the market price of the common stock would increase to the extent needed to give the warrants a recognizable value and that continuance of the warrants would be inherently deceptive to investors and perpetuate useless and unnecessary complexities in the corporate structure.

*Fourth.* The changes as respects cumulative voting and quorum requirements were approved.

The Commission in its order of approval stated that the provisions of the plan relating to the cancellation of the warrants and the amendment of the charter and bylaws would not be operative "until an appropriate

United States District Court shall, upon application thereto, enter an order enforcing said provisions." Holding Company Act Release No. 10643, p. 3. No such provision was made as respects the other provisions of the plan.

Some of the common stockholders thereupon filed a petition for review in the Court of Appeals for the District of Columbia under § 24 (a) of the Act.[2] They

---

[2] Section 24 (a) provides:

"Any person or party aggrieved by an order issued by the Commission under this title may obtain a review of such order in the circuit court of appeals of the United States within any circuit wherein such person resides or has his principal place of business, or in the United States Court of Appeals for the District of Columbia, by filing in such court, within sixty days after the entry of such order, a written petition praying that the order of the Commission be modified or set aside in whole or in part. A copy of such petition shall be forthwith served upon any member of the Commission, or upon any officer thereof designated by the Commission for that purpose, and thereupon the Commission shall certify and file in the court a transcript of the record upon which the order complained of was entered. Upon the filing of such transcript such court shall have exclusive jurisdiction to affirm, modify, or set aside such order, in whole or in part. No objection to the order of the Commission shall be considered by the court unless such objection shall have been urged before the Commission or unless there were reasonable grounds for failure so to do. The findings of the Commission as to the facts, if supported by substantial evidence, shall be conclusive. If application is made to the court for leave to adduce additional evidence, and it is shown to the satisfaction of the court that such additional evidence is material and that there were reasonable grounds for failure to adduce such evidence in the proceeding before the Commission, the court may order such additional evidence to be taken before the Commission and to be adduced upon the hearing in such manner and upon such terms and conditions as to the court may seem proper. The Commission may modify its findings as to the facts by reason of the additional evidence so taken, and it shall file with the court such modified or new findings, which, if supported by substantial evidence, shall be conclusive, and its recommendation, if any, for the modification or setting aside of the original order. The judgment and decree of the

challenged the *First* and *Second* provisions of the plan, which we have described above. They also asked that the *Third* and *Fourth* provisions, the ones which were made subject to approval by the District Court, be approved by the Court of Appeals. The petitioner in this Court is a protective committee representing holders of the option warrants. It moved to intervene in the review proceedings in the Court of Appeals, claiming that forfeiture of the warrants was not justified. The Commission and United opposed the intervention on the ground that by reason of the Commission's order and § 11 (e) of the Act [3] only the District Court had jurisdiction to

court affirming, modifying, or setting aside, in whole or in part, any such order of the Commission shall be final, subject to review by the Supreme Court of the United States upon certiorari or certification as provided in sections 239 and 240 of the Judicial Code, as amended (U. S. C., title 28, secs. 346 and 347)."

[3] Section 11 (e) provides:

"In accordance with such rules and regulations or order as the Commission may deem necessary or appropriate in the public interest or for the protection of investors or consumers, any registered holding company or any subsidiary company of a registered holding company may, at any time after January 1, 1936, submit a plan to the Commission for the divestment of control, securities, or other assets, or for other action by such company or any subsidiary company thereof for the purpose of enabling such company or any subsidiary company thereof to comply with the provisions of subsection (b). If, after notice and opportunity for hearing, the Commission shall find such plan, as submitted or as modified, necessary to effectuate the provisions of subsection (b) and fair and equitable to the persons affected by such plan, the Commission shall make an order approving such plan; and the Commission, at the request of the company, may apply to a court, in accordance with the provisions of subsection (f) of section 18, to enforce and carry out the terms and provisions of such plan. If, upon any such application, the court, after notice and opportunity for hearing, shall approve such plan as fair and equitable and as appropriate to effectuate the provisions of section 11, the court as a court of equity may, to such extent as it deems necessary for the purpose of carrying out the terms and provisions of

review the provisions of the plan respecting the elimination of the warrants and the amendments to the charter and bylaws.

The Court of Appeals allowed petitioner to intervene. It held that so long as the Commission had not applied to a District Court under § 11 (e) to enforce a plan, the Court of Appeals had exclusive jurisdiction on petition of an aggrieved person under § 24 (a) to review the entire plan, including those provisions which the Commission made enforceable by the District Court. The Court of Appeals further held that if it affirmed or modified an order of the Commission approving a plan and the Commission thereafter applied to the District Court to obtain enforcement, the District Court would have no function except to enforce, since the ruling by the Court of Appeals on the fairness of the plan would be binding on the District Court. Accordingly the Court of Appeals reviewed the entire plan, found it fair and equitable in all respects, and affirmed the Commission's order. 92 U. S. App. D. C. 172, 203 F. 2d 611. The case is here on certiorari limited to the question of jurisdiction. 346 U. S. 810.

The question is not whether there is judicial review of orders of the Commission. The question is which orders are reviewable in the District Court, which in the Court of Appeals. The first reading of the Act may leave the impression that there is conflict between § 24 (a) and § 11 (e). Section 24 (a) gives review in the Court of Appeals of "an order" of the Commission and grants the

such plan, take exclusive jurisdiction and possession of the company or companies and the assets thereof, wherever located; and the court shall have jurisdiction to appoint a trustee, and the court may constitute and appoint the Commission as sole trustee, to hold or administer, under the direction of the court and in accordance with the plan theretofore approved by the court and the Commission, the assets so possessed."

Court of Appeals "exclusive jurisdiction to affirm, modify, or set aside such order, in whole or in part." This is clearly broad enough to include an order of the Commission under § 11 respecting a plan of a holding company seeking compliance with § 11 (b). Section 11 (e), however, provides in some instances for review of such plans on application by the Commission to the District Court. Moreover, the Commission by virtue of § 18 (f)[4] may apply to the District Court for enforcement of any of its orders where it appears that someone is about to commit a violation.

We are tendered several alternatives:

1. That the Court of Appeals having first acquired jurisdiction can and should review the entire plan.

2. That the District Court can and should review all phases of the plan in an enforcement proceeding and, pending application for enforcement, no review of any phase of the plan should be entertained by the Court of Appeals.

3. That a so-called split review is permissible where as here the Commission has reserved for enforcement pro-

---

[4] Section 18 (f) provides:

"Whenever it shall appear to the Commission that any person is engaged or about to engage in any acts or practices which constitute or will constitute a violation of the provisions of this title, or of any rule, regulation, or order thereunder, it may in its discretion bring an action in the proper district court of the United States, the [district court of the United States for] the District of Columbia, or the United States courts of any Territory or other place subject to the jurisdiction of the United States, to enjoin such acts or practices and to enforce compliance with this title or any rule, regulation, or order thereunder, and upon a proper showing a permanent or temporary injunction or decree or restraining order shall be granted without bond. The Commission may transmit such evidence as may be available concerning such acts or practices to the Attorney General, who, in his discretion, may institute the appropriate criminal proceedings under this title."

ceedings in the District Court only certain provisions of the plan, the Court of Appeals being restricted under § 24 (a) to those not so reserved.

We have concluded that the so-called split review is permissible under the circumstances here present and that the Court of Appeals had jurisdiction under § 24 (a) to review all questions tendered it, except those pertaining to the elimination of the option warrants and the amendments to the charter and bylaws. In result we affirm in part and reverse in part the Court of Appeals on the jurisdictional question to which we restricted the grant of the petition for certiorari.

It should be noted to begin with that the Act marks out two paths to compliance by a registered holding company with the requirements of the Act. One is the procedure under § 11 (b) whereby the Commission by order may require that designated steps be taken by the holding company. Failing that, the Commission may apply to a District Court for enforcement of its orders under § 11 (d). See *Commonwealth & Southern Corp.* v. *Securities & Exchange Commission,* 134 F. 2d 747. We are not concerned here with that method of bringing holding companies into compliance with the Act. We deal here with the second method of compliance—the voluntary reorganization which the company itself submits under the broad discretion Congress left to management to determine how to bring their systems into compliance with the Act. Our problem starts under § 11 (e) with the provision that a holding company "may . . . submit a plan to the Commission for the divestment of control, securities, or other assets, or for other action . . . enabling such company . . . to comply with the provisions of subsection (b)."

We turn then to problems involved in the efforts of registered holding companies voluntarily to meet the requirements of the Act.

The Congress contemplated that under this Act some holding companies might satisfy the requirements of § 11 by divesting themselves of control and converting themselves into investment companies. See S. Rep. No. 621, 74th Cong., 1st Sess., p. 13. If in anticipation of that step a holding company desired to give its security holders an opportunity to withdraw from the enterprise and with the approval of the Commission made them an offer to exchange their securities for securities in its portfolio, there would be no doubt that the fairness of that offer would be reviewable by the Court of Appeals under § 24 (a) on petition of a security holder. Two cases drawn from United's program of compliance with the Act are illustrative.

After the Commission ordered United to simplify its capital structure and cease to be a holding company, United proposed a plan for eliminating its preference stock by making an offer to exchange on a voluntary basis securities of subsidiaries and cash for the preference stock. The Commission approved; and review of that plan was had in the Court of Appeals under the procedure of § 24 (a) of the Act. *Phillips* v. *Securities & Exchange Commission,* 153 F. 2d 27. Later United proposed the *pro rata* distribution of shares of a subsidiary to holders of its common stock. The Commission approved; and review of that plan was had under § 24 (a) in the Court of Appeals. *Phillips* v. *Securities & Exchange Commission,* 87 U. S. App. D. C. 380, 185 F. 2d 746.

If, therefore, United had offered its common stockholders cash or portfolio securities for their common stock and had put the offer in a separate plan, not making it physically a part of a more comprehensive plan, and the Commission had approved the exchange, there can be no doubt that that plan could have been reviewed by the Court of Appeals under § 24 (a). We are unable to see why the

mere fact that the offer is not in isolation but one of several proposals joined together for presentation to the Commission and approved by the Commission at the time it approves the other proposals should make a difference for purposes of judicial review.

Mr. Justice Rutledge writing for the Court in *Securities & Exchange Commission* v. *Central-Illinois Corp.*, 338 U. S. 96, pointed out that the difference between § 11 (e) and § 24 (a) is not essentially in the scope of judicial review. Rather, it is in the function which the two systems of review perform. As he said, § 11 (e) serves "to mobilize the judicial authority in carrying out the policies of the Act." *Id.*, p. 125. The full import of that statement can be understood only if § 11 (e) and the functions it performs are appreciated. Section 11 (e) applies to a plan which a holding company submits to the Commission for purposes of complying with the Act. In other words, it applies to what traditionally has been known in the field of business and finance as voluntary reorganizations, that is to say, reorganizations designed by the management, not those imposed on a company from without. The holding company proposes the voluntary reorganization; the Commission, after hearing, approves, if it finds the plan "necessary to effectuate the provisions of subsection (b) and fair and equitable to the persons affected by such plan." If § 11 (e) ended there, it would be plain that judicial review would be had either under § 24 (a) on a petition by an "aggrieved" person or under § 18 (f) if and when the Commission brought an action to enforce compliance with its order approving a plan. Section 11 (e), however, has its own enforcement procedure, somewhat peculiarly worded. It gives a registered holding company the standing to ask that the enforcement machinery of the Act be placed behind its voluntary plan of reorganiza-

tion.[5] Section 11 (e) provides, "The Commission, *at the request of the company,* may apply to a court, in accordance with the provisions of subsection (f) of section 18, to enforce and carry out the terms and provisions of such plan." (Italics added.)

The Commission may or may not accede to the company's suggestion. Section 11 (e) does not make it mandatory for the Commission to do so. It only says that the Commission "may" do so. That implies the exercise of discretion. The company might request, as here, that only some of the terms and provisions of a plan

---

[5] In speaking of plans of voluntary reorganization under § 11 (e) the Court in *Commonwealth & Southern Corp.* v. *Securities & Exchange Commission,* 134 F. 2d 747, 751, said:

"If the plan is one which can be carried out by the sole action of the parties thereto no further proceedings are needed. If not, the subsection authorizes the Commission, at the request of the company proposing the plan, to make application to a district court to enforce and carry out the plan. In this proceeding the court, if it finds the plan fair, equitable and appropriate, may direct it to be carried out, taking possession of the company and its assets if necessary to that end. . . .

"It will thus be seen that the congressional purpose is to leave open to the holding companies a broad area of discretion in determining just how they are to bring their systems into compliance with the required standards. . . .

"It is obvious that in many cases the desired result may be reached in more than one way. Congress evidently intended to permit the Commission to leave to the company involved the initiative in suggesting from among the available alternative methods that one which it deems most appropriate. This seems clear in the light of the fact that under section 11 (e) the company is not restricted to proposing a plan of compliance which it is in a position to carry out itself but it may also propose a plan affecting the rights of third persons which it may, through the Commission, request a court to enforce against the opposition of those third persons. It is only if the company does not propose a plan which the Commission and the court approve that the Commission under section 11 (d) itself may propose and seek enforcement of a plan against the opposition of the company."

be submitted to the enforcement proceedings of the Act; or it might ask that each and every proposal be so treated. The Commission might refuse the request or it might grant it in whole or in part. The considerations governing the exercise of the Commission's discretion would embrace a variety of factors.

It may be necessary to eliminate one class of stock; an exchange on a voluntary basis may not be possible because some security holders object. Therefore a *compulsory* retirement of the stock may be necessary. One step in United's program of compliance involved that procedure, as is shown by *In re United Corp.*, 82 F. Supp. 196. United proposed a plan for the *compulsory* retirement of preference stock; the Commission approved and applied to the District Court for enforcement.

An enforcement decree on one phase of a voluntary plan of reorganization may be an appropriate and convenient means (if not a necessary one) to modify a certificate of incorporation. Thus in Delaware the corporation statute directs the Secretary of State to accept a decree of a federal court enforcing a provision of a plan which modifies, alters, or repeals the bylaws of a Delaware corporation or amends its certificate of incorporation. 8 Del. Code Ann., 1953, § 245.

Illustrations could be multiplied. But those we have given indicate that a holding company may not be able to carry through without some degree of compulsion all phases of the voluntary plan it submits, that it may need the force of a judicial decree behind the Commission's order in order to put through its reorganization.

On the other hand, the holding company might conclude that market conditions were so favorable, its own financial situation so strong, the terms of the voluntary reorganization so attractive that it would need no help from any source to effectuate the plan, once the Commission approved.

That is the reason Congress left the choice—the right to ask for enforcement help—to the holding company.

Conceivably the Commission might refuse to give the help requested unless other phases of the plan were also put through enforcement proceedings. That conclusion might be reached where the several aspects of the plan were so closely and intimately related one to the other that the fairness of one turned on the fairness of the other. No such issue arises here, for the question whether the common stockholders who want to withdraw from United have been offered enough Niagara Mohawk stock or enough cash has nothing to do either with the elimination of the option warrants or the changes in the charter and bylaws to govern stockholders who do not withdraw from the enterprise.

We have said enough to indicate some of the considerations confronting the Commission when it decides, in connection with a voluntary reorganization plan under § 11 (e), whether it will "mobilize the judicial authority in carrying out the policies of the Act," to use the words of Mr. Justice Rutledge in the *Central-Illinois Corp.* case, *supra.* The Commission may send only one provision of a plan of voluntary reorganization into enforcement proceedings and let all others go the route of § 24 (a) should an aggrieved person desire to take them there. Here as in other fields (*Phelps Dodge Corp.* v. *Labor Board,* 313 U. S. 177, 194) the relation of remedy to policy is peculiarly for the administrative agency. See *American Power Co.* v. *Securities & Exchange Commission,* 329 U. S. 90, 112. We cannot say that the Commission abused its discretion in the present case, for, as we have already observed, the amendments of the charter and bylaws and the fairness of the elimination of the option warrants have no apparent relevancy to the manner in which the common stockholders, who sought review in

the Circuit Court under § 24 (a), say they have been treated.

It may be, as some argue, that it would be a better scheme to have all or none of a plan go into enforcement proceedings under § 11 (e). If the entire plan were presented in the enforcement proceedings, all parties would be notified and heard at one time. But Congress in its wisdom has provided differently. The problem relates, as we have said, only to voluntary reorganizations, that is to plans submitted by the companies themselves to bring their operations into compliance with the Act. The history of voluntary recapitalizations, readjustments, and reorganizations may well have suggested that the litigious issues would not be numerous, that overall judicial review of the total plan need not be made mandatory, that only select phases and aspects of voluntary reorganization need be put through enforcement proceedings. Certainly one who has an isolated point of objection, whose protest relates only to a single phase of a plan has an advantage in the review accorded him by § 24 (a). He can bring suit in the Court of Appeals in the circuit where he resides or has his principal place of business, or in the District of Columbia. He can sue at once in his own bailiwick and not have to await institution of an enforcement proceeding perhaps in some faraway place. He can have a hearing on his own personal grievance without running the risk that his case may be lost in the large shuffle of an enforcement proceeding where many parties and many interests are involved.

There is nothing strange or irrational in routing the common stockholders in this case to the Court of Appeals and the option warrant holders to the District Court. Each will have his day in court. Nothing that one court does will impinge on the other. Each court will be performing a different function. Whether a better procedure

could be devised is not for us to determine. It is sufficient that the procedure indicated is permissible under the Act, and that the Commission in selecting certain phases of a plan for submission to enforcement proceedings did not, to borrow a phrase from the Court of Appeals for the Third Circuit, lose "sight of the law." [6]

We accordingly affirm the Court of Appeals in taking jurisdiction over the controversy insofar as it related (1) to the sale by United of its holdings and (2) to the offers it made to its stockholders who wanted to withdraw. We reverse the Court of Appeals in taking jurisdiction over the provisions of the voluntary plan of reorganization which the Commission in its order made operative on enforcement by the District Court.

*So ordered.*

---

[6] See *In re Standard Gas & Electric Co.*, 151 F. 2d 326, 331.