In the Matter of The UNITED CORPORATION.

Civ. A. No. 1650.

United States District Court
D. Delaware.

June 9, 1960.

See also 166 F.Supp. 343.

Thomas G. Meeker, Gen. Counsel, Ellwood L. Englander, Sp. Counsel, and Peter H. Morrison, Atty., S. E. C., Washington, D. C., for Securities and Exchange Commission.

William S. Potter, of Berl, Potter & Anderson, Wilmington, Del., Richard Joyce Smith and William T. Farley, of Whitman, Ransom & Coulson, New York City, of counsel, for The United Corp.

Thomas Reath and John Mulford, of Drinker, Biddle & Reath, Philadelphia, Pa., for Committee of Warrant Holders.

Carlos L. Israels, of Berlack, Israels & Liberman, New York City, for Herbert M. Diamond and others.

Randolph Phillips, pro se.

CALEB M. WRIGHT, Chief Judge.

This is a supplemental application of the Securities and Exchange Commission (Commission) seeking approval and enforcement of certain Commission orders providing for the payment of fees and expenses awarded by the Commission pursuant to Section 11(e) of the Public Utility Holding Company Act of 1935, 15 U.S.C.A. § 79k(e). Timely objections to the orders have been filed by Messrs. Drinker, Biddle and Reath (Drinker),

Messrs. Berlack, Israels and Liberman (Berlack), and Charles Tatham, Jr. (Tatham).

 Randolph Phillips on the day set for oral argument applied for permission to present objections to the Commission's order notwithstanding the interested participants had been advised,

"* * * that any person who proposes to oppose the Supplemental Application of the Commission or the enforcement and carrying out of the terms and provisions of the Plan relating to the payment of fees and expenses as determined and ordered by the Commission, or the approval thereof by this Court, shall file with the Clerk of this Court, not later than fifteen days prior to the date of said hearing, a written statement of objections and of any brief proposed to be filed in support thereof, * * *." [1]

As a result of Phillips' noncompliance with the court's directive, the Commission's brief did not address itself to Phillips' claim.[2] Illness and the pressures of New York business were proffered as the reasons for failing to file within the designated period. At no time prior to the hearing date did Phillips attempt to apprise the court of his condition. Phillips, although lacking in formal legal training, has had extensive practical schooling in the judicial arts as evidenced by his many courtroom appearances. Against this background, Phillips' application was denied; and, accordingly, the Commission's supplemental application pertaining to the Phillips claim will be approved.

The Drinker, Berlack and Tatham claims are predicated upon services rendered for warrant holders in connection with proceedings relating to a plan filed

1. Order of the Court dated Dec. 10, 1959; Supplemental Order of the Court dated Dec. 30, 1959.

2. "* * * No objections have been filed by Whitman, Ranson & Coulson; Burns, Blake & Rich; Randolph Phillips; Joseph P. Hyman; Kreiger and Jorgensen; Gordon Becker; and Harold Bladel, with

respect to the allowances made to them, nor has anyone objected thereto. Therefore these claims will not be discussed in this memorandum." *Memorandum of the Securities and Exchange Commission in Support of its Supplemental Application relating to Allowances for Fees and Expenses*, pp. 1–2.

by The United Corporation (United) under Section 11(e) of the Public Utility Holding Company Act of 1935 (Act). The plan voluntarily submitted by United and approved by the Commission in 1951 provided, inter alia, for the transformation of United into a registered holding company and for the cancellation of United's outstanding warrants to purchase 3,732,059 shares of its common stock, with no compensation to the warrant holders.[3]

The claims of the objectants will be discussed seriatim.

### Drinker, Biddle & Reath

The original plan filed by United in November, 1949 provided for new five-year warrants to purchase common stock at $7 per share to be issued in exchange for outstanding warrants at the rate of one new warrant for five old warrants. In June, 1950 at the insistence of the Commission, United amended the plan deleting the five for one exchange and in lieu proposed the outright cancellation of all outstanding warrants without compensation to the holders. At this juncture, the General Protective Committee (Committee) for the holders of option warrants was formed to press the legal rights of the warrant holders. Committee composed of 1,000 persons representing holdings of about one-third of the outstanding warrants, engaged the law firm of Drinker, Biddle & Reath in July, 1950.

Drinker, for its own services and those of its Washington associate, M. Quinn Shaughnessy, requests $57,500 for 5,661 hours devoted to Committee matters.[4] In addition, $14,531.84 is sought as reimbursement for Committee expenses.[5] The Commission awarded Drinker $26,500 for services[6] and $6,960 for expenses.[7]

Drinker asserts that in the course of representing the warrant holders there were eight major legal proceedings in which the warrant holders' rights were in issue:[8]

"(1) Before the Commission, in 1950, in hearings on an Amended Plan filed by United under which all rights of the warrant holders were to be wiped out without compensation.

"The Commission approved the Plan. The United Corporation, 32 S.E.C. 378,500 (1951).

"(2) Before the Court of Appeals for the District of Columbia Circuit, on appeal taken by Randolph Phillips, a stockholder of United, from the Order of the Commission approving the Plan.

"The Court affirmed the Order of the Commission, Downing v. S. E. C., 1953, [92 U.S.App.D.C. 172], 203 F.2d 611.

"(3) On petition for certiorari, filed by us in the Supreme Court of the United States, from the decision of the Court of Appeals affirming the Order of the Commission. This petition was based both (a) on the lack of jurisdiction in the Court of Appeals to review the Order of the Commission, and (b) on the merits.

"The Supreme Court granted certiorari, limited however to the question of jurisdiction.

"(4) On argument before the Supreme Court on the question of jurisdiction of the Court of Appeals.

"The Supreme Court sustained our view that the Court of Appeals had no jurisdiction, and remanded the case to the Commission for further proceedings. General Protective Committee [etc.] v. S. E. C.,

---

3. In re The United Corporation, D.C.D.Del. 1955, 128 F.Supp. 725, 726.

4. The United Corporation, Holding Company Act Release No. 14047 (1959), p. 19.

5. Id., at 24.

6. Id., at 23.

7. Id., at 25.

8. Brief on behalf of Drinker, Biddle & Reath in Support of Objections to Order of Securities and Exchange Commission, pp. 2–4.

1954, 346 U.S. 521 [74 S.Ct. 261, 98 L.Ed. 261].

"(5) Before the Commission on our petition for rehearing and leave to introduce additional testimony.

"This petition was denied. The United Corporation, 35 S.E.C. 645 (1954).

"(6) Before Judge Leahy, of the District Court of Delaware, on petition by the Commission for enforcement of the Plan.

"The Court entered an order enforcing the Plan. The United Corporation, 1955, 128 F.Supp. 725.

"(7) Before the Court of Appeals for the Third Circuit on our appeal from the Order of the District Court.

"The Order was affirmed. The United Corporation, 1956, 232 F.2d 601.

"(8) On our petition to the Supreme Court of the United States for certiorari to review the decision of the Court of Appeals.

"This petition was denied on October 8, 1956. 352 U.S. 839 [77 S. Ct. 59, 1 L.Ed.2d 56]."

The Commission determined,

" * * * that Committee counsel are entitled to modest compensation for their services in the initial hearings on the Plan before us, despite their lack of success, under the normal principles applicable to class representation in proceedings before us * * *. However for their services in the Court of Appeals for the District of Columbia subsequent to our order approving the Plan and in petitioning the Supreme Court for certiorari with respect to the merits, * * * the firm is entitled to compensation on a more reduced basis, and for the services in raising the jurisdictional point in the Supreme Court and for the services subsequent to the granting of the petition for certiorari * * * the United estate should not be required to pay any compensation." [9]

In support of its conclusion the Commission found:

1. That in view of the existing law "there was very little likelihood that the Committee could succeed in its contention that our finding as to the warrants was not supported by substantial evidence"; [10]

2. "The Committee's other principal contention * * * was the argument that we lacked power to order cancellation since the plan provided for the transformation of United into an investment company rather than for its dissolution or continuance as a holding company. * * * While this position may have been arguable the possibility that it would prevail was extremely remote"; [11]

3. "The policy which justifies charging the reorganization estate with the costs of litigation relating to the merits of a plan was substantially satisfied after the Committee had unsuccessfully presented its contentions to the Court of Appeals for the District of Columbia and petitioned the Supreme Court for certiorari on the merits. The result of the successful raising of the jurisdictional issue by the Committee before the Supreme Court was to enable the Committee to embark on a second round of unsuccessful litigation on the plan * *, and * * * it would be unfair to United to require it to bear the Committee's cost in such litigation or its costs in raising the jurisdictional point and making additional litigation necessary." [12]

▇▇▇ The fundamental issue is whether the Commission's findings of

---

9. The United Corporation, Holding Company Release No. 14047 (1959), p. 21.

10. Id., at 22.

11. Ibid.

12. Ibid.

fact and conclusions of law are (1) adequate; (2) supported by substantial evidence, and (3) in accordance with legal standards.[13] The Commission does not dispute the propriety of requiring the estate to bear the necessary and reasonable costs incurred by the various security interests in an 11(e) proceeding. Nor, does it confine the compensable allowances to those incurred solely before the Commission. Moreover,· with respect to representation of a qualified Committee of security holders Commission concedes the right to compensation is not affected by the fact that counsel's efforts did not result in tangible benefits, although this would require the amount of the fee be fixed on a relatively modest basis.

Counsel for the Commission at oral argument observed that the basis of the Commission denial of compensation pertaining to the so-called second round litigation is that, "there comes a point in the pursuit of a hopeless case when there is not a chance in the world of winning it; there comes a point at which the estate just should not be compelled to pay for that sort of activity."[14] According to the Commission that point was reached after the Circuit Court for the District of Columbia had ruled adversely to the objectants and the Supreme Court denied certiorari on the substantive issues notwithstanding the ultimate reversal by the Supreme Court on jurisdiction. Adhering to this reasoning, the Commission denied the Drinker claim for compensation and expenses in pursuing the jurisdictional question before the Supreme Court, and for the enforcement phases before the District Court, the Court of Appeals and the final denial of certiorari by the Supreme Court. Counsel for the Commission at oral argument candidly stated that the Commission would probably have allowed compensation for the second round if the litigation

had not been initially sidetracked by the District of Columbia proceeding.[15]

The Commission's approval of the cancellation of option warrants as provided for in United's amended plan required enforcement by an appropriate District Court. Prior, however, to the presentment of an application to an enforcement court, Randolph Phillips and other stockholders of United appealed under Section 24(a) to the Court of Appeals for the District of Columbia from the Commission order approving the plan. Phillips advanced the position, the Court of Appeals had jurisdiction to review all aspects of the plan including all those which the Commission had expressly made subject to review by the District Court.

The Committee petitioned the Court of Appeals for leave to intervene and over the objections of United and the Commission, leave was granted. The Court of Appeals affirmed on the merits the opinion of the Commission, stating, "While there is evidence to the contrary, the findings of the. Commission with respect to the warrants are supported by evidence which we regard as substantial."[16] It further held, that it had jurisdiction to review the provisions of the plan which the Commission had made subject to District Court review and enforcement, but, for enforcement, those provisions would have to be submitted to the District Court.[17]

The Committee then petitioned the Supreme Court for certiorari alleging, inter alia, the Court of Appeals lacked jurisdiction, the same position advanced by the SEC before the Court of Appeals. The Supreme Court granted certiorari limited to the jurisdictional issue.[18] The Supreme Court accepted the so-called "split review" procedure; i. e., review of certain provisions of the plan by the

13. In re United Corporation, 3 Cir., 1957, 249 F.2d 168, 171.

14. Transcript of Oral Argument, March 15, 1960, p. 21.

15. Id., at 22.

16. Downing v. S.E.C., 1953, 92 U.S.App. D.C. 172, 203 F.2d 611, 624.

17. Id., 203 F.2d at page 620.

18. General Protective Committee etc. v. S.E.C., 1954, 346 U.S. 521, 74 S.Ct. 261, 98 L.Ed. 261.

Court of Appeals and review and enforcement in a District Court of the provisions as to the cancellation of the option warrants.[19] On remand, the Court of Appeals amended its former judgment, dismissing for lack of jurisdiction that portion of its order relating to provisions of the plan operative only on enforcement by a District Court. Subsequently, the Committee, et al., petitioned the Commission to reopen the hearings to adduce additional testimony. The Committee's application was denied and thereafter the Commission filed its application in this Court for enforcement.[20] The terms of the plan submitted for enforcement were approved and on appeal the Circuit Court of Appeals affirmed.[21] The Committee's application for certiorari to the Supreme Court was denied.[22]

■ The Commission's allowance of fees only up to and including the determination of the Court of Appeals for the District of Columbia, permits compensation for services before a body totally lacking in jurisdiction and denies reimbursement for services rendered before tribunals competent to accord a binding adjudication. The Commission, after stating in a footnote, "the Committee itself had encouraged the Court of Appeals to assume full jurisdiction to review the entire plan",[23] observed:

"We do not, of course, imply that the Committee had no right to litigate the questions as fully as it did or that it should not have changed its position with respect to the jurisdiction of the Court of Appeals in order to secure further consideration of its contentions or taken any of the other steps that it did to obtain the last possible measure of administrative and judicial examination of its position. That was for the Committee to decide. However, the United estate, which was thereby made to incur the expense of the defense to such litigation, should not also be made to underwrite such extensive efforts as part of the normal reorganization process. * * "[24]

Assuming for the present, that the Committee was in some manner to blame for the Court of Appeals' proceeding, it is difficult to appreciate the Commission's reasoning in allowing the Committee compensation for these efforts. Logically, it would have been more appropriate to deny compensation for this phase, and award compensation for the validly constituted District Court proceedings. The Commission's position is not strengthened by stating that its opinion should not be construed to "imply that the Committee had no right to litigate the question as fully as it did."[25] United during all stages of the litigation has been solvent. These warrants formed a significant part of the capital structure of United and would have continued to remain an integral component but for intercession of the Commission. The original plan proposed by United provided for retention of the warrants. United, however, acquiesced in the Commission's position that the warrants be cancelled without compensation. Once the United management abandoned their cause, the warrant holders had every right to protect their interests. United owed a duty of protecting its security holders' interest; therefore, when management determined in good faith to accede to the Commission in derogation of rights of the warrant holders it had the obligation, at the least, to under-

19. Id., 346 U.S. at page 529, 74 S.Ct. at page 266.

20. In re The United Corporation, D.C.D. Del.1955, 128 F.Supp. 725.

21. In re United Corporation, 3 Cir., 1956, 232 F.2d 601.

22. General Protective Committee etc. v. United Corporation, 1956, 352 U.S. 839, 77 S.Ct. 59, 1 L.Ed.2d 56.

23. The United Corporation, Holding Company Act Release No. 14047 (1959), fn. 35.

24. Id., at 22–23.

25. Ibid.

write the reasonable costs required to legally protect the warrant holders' interests. It is incongruous for the Commission to say that the Committee had the right to be represented to the bitter end but that at an arbitrary point in time, the funds for such representation must come from a source other than the estate. As Chief Judge Biggs noted in the Engineers Public Service Co. case:[26]

> " * * * Had the stockholders been unrepresented the court below could have appointed counsel to represent the interested security classes and would have been entitled to have authorized their payment from the estate, as it has in the past in respect to 77B and Chapter X proceedings."

The Chief Judge's next remarks are peculiarly appropriate, namely,

> "The fact that most of the services of the appellees were performed before the courts rather than the Commission is not a reason for holding them ineligible for compensation. The statute requires court review and encouraging adversary proceedings before courts is as important as encouraging them before the Commission."[27]

And as Chief Judge Leahy observed in the early stages of these proceedings, "Contrary to SEC's decision, the ball game is not over after the Commission inning."[28]

Commission counsel's reliance on the "futile lost cause" dicta of Chief Judge Leahy in the Engineers Public Service Co. case is misplaced.[29] The Commission never assigned as its reasons in denying compensation for the enforcement litigation that the cause was hopeless. It took the position that the United estate should not be made to underwrite such *extensive efforts* as part of the normal reorganization process. Since the Commission allowed compensation during the so-called first round, it necessarily concedes the right of the warrant holders to be represented at the expense of the estate in a court review. In any event, Commission counsel's interpretation of the "futile lost cause" test is not a proper measure with respect to the present factual setting. Commissioner Sargent in his able dissent verbalized the appropriate standard:

> " * * * in any successful reorganization, sound philosophical and legal policy demands in the first instance that all security interests be ably and vigorously represented by skilled and astute counsel and that during the development of all facets of the proceedings all reasonable positions which might conceivably be taken on behalf of such security holders, even though those whose interests may eventually be found to be worthless, should be taken and advocated to the fullest. In my view, the representation of all interested parties—in this case, all security holders—should be strongly encouraged both by us as a Federal Regulatory Agency and by the Courts."[30]

The Supreme Court's reversal on jurisdictional grounds rendered the Court of Appeals' decision a nullity. Committee counsel were therefore compelled in the interest of their client to proceed further, at least through the courts of competent jurisdiction.

Sound public policy dictates the protection of the rights of the fringe security holders through representation by counsel paid for by the estate in reorganization proceedings of a solvent corporation. In denying compensation

26. In re Engineers Public Service Co., 3 Cir., 1955, 221 F.2d 708, 713.

27. Ibid.

28. In re United Corporation, D.C.D.Del. 1954, 119 F.Supp. 524, 532.

29. Transcript of Oral Argument, March 15, 1960, p. 27; In re Engineers Public Service Co., D.C.D.Del.1953, 116 F. Supp. 930, 936.

30. The United Corporation, Holding Company Act Release No. 14047 (1959), p. 28.

for the second round litigation, this policy has been thwarted. At the minimum, modest compensation and expense reimbursement should have been awarded Committee counsel for the enforcement phase of the litigation including the proceedings before Chief Judge Leahy, the Circuit Court of Appeals for the Third Circuit, and the final denial of certiorari by the Supreme Court.

The attack upon Committee counsel's role in the first round strikes this court as unwarranted. It was stockholder interests represented by Randolph Phillips which precipitated the District of Columbia action. The Commission could have averted the first round by commencing a prompt enforcement suit in this court. Phillips' action placed the Committee in a dilemma. The Commission had entered its order approving United's plan to cancel the warrants. The paramount objective of the Committee was to reverse the Commission determination. It was content to await engaging the Commission until enforcement had been initiated by the Commission. When Phillips, however, jumped the gun it was incumbent upon the Committee to act, for if it sat idly by in view of the plenary relief sought by Phillips, the contest would go by default. The compelling nature of the circumstances required the Committee to enter the District of Columbia Section 24(a) proceeding. In this posture it had two choices: (1) to appear specially and attack the court's jurisdiction, or (2), to seek plenary review. Sound legal tactics dictated the latter position. Successfully resisting Phillips merely on jurisdiction would have reinstated the adverse Commission determination. The Commission had ordered the warrants cancelled. It thus became incumbent upon the Committee to seek reversal of the Commission. Contesting jurisdiction would avail the Committee little. A Court of Appeals decision on the merits in favor of the Committee would supersede the Commission adjudication and shift the burden to the Commission, if it desired to proceed further. The Court of Appeals in accepting jurisdiction indicated that the jurisdictional question was not a settled principle of law. Against this background it was certainly prudent for Committee counsel to apply for leave to intercede and have the matter determined on the merits. When the Court of Appeals accepted jurisdiction in the premises and ruled on the merits against the Committee, it was the duty of Committee counsel to seek reversal of the Court of Appeals decision. Drinker in pursuing the Committee's cause was compelled to raise in the Supreme Court every possible avenue of reversal. The Supreme Court in rejecting the Commission's contention that the Committee was estopped to assert the Court of Appeals lacked jurisdiction is indicative that the Supreme Court recognized the Committee's dilemma. The Supreme Court's decision nullified the prior court proceedings and meant that ultimate resort to a District Court with respect to cancellation of the warrants was required. The second round was thus dictated by the mandate of the Supreme Court.

The Commission suggestion that the decision of the Court of Appeals on the merits and the subsequent denial of certiorari by the Supreme Court to consider the merits was adequate review of the Committee's case is without substance. Commissioner Sargent's commentary on this point is a complete answer to the majority's position: [31]

"It seems to me that the majority opinion has failed to appreciate the significance of the Supreme Court's reversal on jurisdictional grounds and its denial of certiorari on the merits. The Supreme Court's reversal on jurisdictional grounds had the effect of rendering the first appeal to the Court of Appeals for the District of Columbia from our approval of the plan a nullity and of requiring that the Commission determination be enforced de novo through the Federal District Court

in the first instance in accordance with the specific provisions contained in the Commission's plan approval order. In no sense can it be inferred that the Supreme Court's denial of certiorari on the merits constituted any expression by that court as to the merits of the plan itself. These warrant holders did not commence the first appeal and cannot be blamed for joining in that appeal in order to protect their rights. Since the majority opinion allows compensation during the so-called first round of litigation, it necessarily recognizes the right of the warrant holders to be represented in a court review. Since the Supreme Court reversed that determination, there was in fact no such review by the Courts. Hence it is improper to deny such compensation predicated upon the so-called second round of litigation, which in fact was the only valid litigation that occurred at all."

■ Committee counsel's efforts were never directed toward prolonging the litigation and in every instance they acted in the utmost good faith.[32] Commissioner Sargent's finding that the Committee's position was reasonable and that Committee counsel made a definite contribution to the ultimate plan is amply supported by the record.[33]

The Commission determination in not awarding Drinker compensation for participation in the second round is found to be arbitrary, against the weight of the evidence and not in conformity with appropriate legal standards.

■ Chief Judge Leahy in In re Engineers held in fee matters, the court, after a determination that the decision of the Commission is legally vulnerable, has the power to accord affirmative relief.[34] The Commission subscribes to the policy that the litigation costs of obtaining a fee are not compensable.[35] To send this mat-

32. "This litigation has not been a case of counsel appearing in a futile lost cause in an effort to prolong litigation." In re Engineers Public Service Co., D.C. D.Del.1953, 116 F.Supp. 930, 936.

33. "5. In a very real sense the determination made by this Commission in 1951 that the warrants had no value 'presently or in the reasonable foreseeable future' was nothing more than an educated guess. * * * In these cirstances the Commission and the Courts should have encouraged the finest type of legal controversy and advocacy so that their determinations could be properly tested in order to avoid the possibility of a forfeiture erroneously accomplished.

"6. Unlike the situation existing in Niagara Hudson Power Corporation v. Leventritt, 1951, 340 U.S. 336, [71 S.Ct. 341, 95 L.Ed. 319], the instant case involved the existence of an evidentiary record which either supported the Commission's determination of earnings forecast and of no value to the option warrants or it did not. Taking a position that it did not was, in my judgment, reasonable. * * * In any event, those interested in the rights of the option warrant holders made a definite contribution to the ultimate plan. I do not view counsel's participation on behalf of the warrant hold-

ers as a case where counsel appeared 'in a futile lost case [cause] in an effort to prolong litigation.' * * *" The United Corporation, Holding Company Act Release No. 14047 (1959) p. 29.

34. "There remains one question: Have I power to grant affirmative relief? I think I do. Counsel's services here were performed before this court and the appellate courts, as SEC itself has emphasized. Thus, this court is plainly in a position to evaluate the worth of these services just as well as the SEC. I think, under the facts of this case, where counsel under this court's order of May 8, 1952, were expressly enjoined from obtaining judicial relief from any proceeding other than the present one, counsel should be entitled to receive affirmative relief at this stage." In re Engineers Public Service Co., D.C.D.Del.1953, 116 F.Supp. 930, 946.

35. "It is well established, as applicant itself has pointed out in connection with its opposition to Phillips' application, that a fee claimant is not entitled to compensation for preparing and presenting his own request for an allowance to the tribunals which must initially pass upon them, i. e. this Commission and the District Court in Section 11(e) proceedings and the District Court in Chap-

**514**

ter back to the Commission, would thus place an unjustified economic burden on Committee counsel. Prior proceedings in this very case have established that courts are peculiarly competent to determine the reasonableness of fees.[36]

■ It is not discernible from the Commission's findings the number of compensable hours or hourly rate forming the basis of the award to Committee counsel. Judge Kalodner has criticized the Commission for failing to make such findings.[37] A further deterrent to a proper analysis is the fact that the Commission directed the hearing examiner to dispense with findings of fact and conclusions of law. The Commission's determination is thus based upon the cold record. Credibility has no office under these circumstances.

■ Committee counsel estimated the number of hours devoted to Committee work to be 5,661. In accordance with the court's announced views and since no one has disputed the number of Committee chargeable hours the entire 5,661 hours are compensable.

For these services counsel seek $57,500, or approximately $10 an hour. Counsel concede that under the teaching of In re Engineers Public Service Co., supra, they are entitled to only modest compensation.[38]

Drinker characterizes the fee requested as the absolute minimum, less than which no lawyer should be expected to receive.[39] Drinker directs attention to In re United Corp.,[40] and In re Engineers Public Service Co.,[41] in support of the

ter X [11 U.S.C.A. § 501 et seq.] proceedings. This principle is based upon a balancing of the competing equities of the persons affected which in the interests of fairness must make appropriate 'practical distinctions * * * in distributing the costs of the burden of the litigation', and has been recognized as a 'salutary rule' which helps preserve the assets of the estate." The United Corporation, Holding Company Act Release No. 14047 (1959) p. 8.

36. "The case books are replete with instances in which counsel fees and expenses have been allowed after their denial by the Commission in Section 11(e) proceedings, or substantially increased. In In re Engineers Public Service Company, supra, we affirmed the action of the District Court in allowing fees and expenses to counsel for dissenting stockholders after their disallowance by the Securities and Exchange Commission. In In re Public Service Corp. of New Jersey, supra, where there was a petition to this court for review of an order of the Securities and Exchange Commission reducing attorneys' fees for services in Section 11(e) proceedings, we reversed the Commission's order and increased the fee. In Standard Gas & Electric Co. v. Securities and Exchange Commission, supra, the District Court's allowance of counsel fees and expenses in reversal of the Commission's order was affirmed.

"It may be noted parenthetically that it is well-settled that ' * * * appellate courts * * * are themselves experts as to the reasonableness of fees, and may, in the interest of justice, fix the fees of counsel * * *.' " In re United Corporation, 3 Cir., 1957, 249 F.2d 168, 183.

37. "All that the Commission did, as appears from its Opinion, was to shoot an arrow into the sky and bag a 'package' of fee and expenses of $50,000 with no further explanation as to how it arrived at that sum * * *. Nowhere, in its Opinion did the Commission set forth the basis of its allowance to Phillips or any standard or method of valuation of his services or disbursements. That this violates the unequivocal mandate of the law is clear. As to every material issue presented, an administrative agency must make findings of fact. * * *

* * * * *

"What has been said with reference to the Commission's failure to make required findings in its allowance to Phillips is equally applicable to Hyman. The Commission's Opinion merely stated a 'bare conclusion' and made no specific findings with reference to the number of his compensable hours or hourly rate of compensation." In re United Corp., 3 Cir., 1957, 249 F.2d 168, 180–181, 182.

38. Brief on Behalf of Drinker, Biddle & Reath in Support of Objections to Order of Securities and Exchange Commission, p. 4.

39. Id., at 14.

40. 3 Cir., 1957, 249 F.2d 168.

41. 3 Cir., 1955, 221 F.2d 708; affirming D.C.D.Del.1953, 116 F.Supp. 930.

hourly figure of $10. The unsuccessful common stockholders in the Engineers Public Service Co., case, supra, had originally been awarded by the Commission $5,000 for 4,265 hours or $1.17 an hour. Chief Judge Leahy increased the allowance to $50,000 representing an hourly basis of $11.70.[42] In earlier proceedings of the present controversy, stockholder representatives were allowed by the Court of Appeals fees of $50,000 and $12,000 for an estimated 5,000 and 1,200 hours of effort, an hourly rate of $10.[43] In a very recent case, In re International Hydro-Electric System, D.C.Mass., 183 F.Supp. 689, Judge Ford in reversing a Commission determination denying the non-prevailing stockholders counsel fees and expenses, approved an award for services of $50,000 for 2,882 hours, reflecting an $18 per hour rate.

The dissenting Commissioners would allow $7,000 in addition to the original $25,000 award.[44] The method employed by Chairman Gadsby and Commissioner Sargent in arriving at this additional allowance is not articulated.

For some inexplicable reason United finds support in opposing Committee counsel's fee request in the fact that approximately " * * * 97% of the total estimated and recorded hours of counsel's firm is attributed to the activities of three partners * * * and that much of the work of one of these partners involved (a) 'considerable amount of research that ordinarily would be performed by a junior associate.' " [45] This assertion is entirely irrelevant in view of the modest hourly charge requested by Drinker.[46] A claim of $10 per hour for legal services is modest under any standard and in many instances would barely compensate the rendering firm for its overhead.

Accordingly, Committee counsel's demand for $57,500 is deemed fair and reasonable. With respect to the $14,531.84 in expenses claimed, since the Commission did not find any charge to be inappropriate, it follows in conformity with the views enunciated herein, Committee counsel should be reimbursed for the full amount of the claimed expenses.

The order of the Commission is reversed and United is directed to pay Committee counsel $57,500 for services rendered, and $14,531.84 for reimbursement of expenses.

### Charles Tatham, Jr.

Charles Tatham, Jr., a security analyst, served as secretary of the Committee and appeared as an expert witness on its behalf in the proceedings before the Commission. Tatham requested a fee of $10,000 for 600 hours of Committee services. The Commission allowed Tatham $2,500 for 310 hours spent on Committee matters during the first round of the litigation. The Commission denied Tatham compensation for services rendered during the validly constituted court proceedings, "for the reasons set forth * * * in connection with the application of the Committee." [47] This holding for the parity of reasoning

---

42. In re Engineers Public Service Co., D.C.Del.1953, 116 F.Supp. 930.

43. In re United Corp., 3 Cir., 1957, 249 F.2d 168.

44. "I [Chairman Gadsby] would thus allow an additional $7,000 compensation to the firm of Drinker, Biddle & Reath for their efforts subsequent to such stage of the proceedings * * *.
 * * * * *
 "While I [Commissioner Sargent] concur in the rationale and result achieved by the dissent of Chairman Gadsby, I reach my conclusions for the following additional reasons:" The United Cor-

poration, Holding Company Act Release No. 14047 (1959) pp. 27, 28.

45. Memorandum of the United Corporation in Support of Supplemental Application, p. 12.

46. See Appendix to In re Engineers Public Service Co., supra, wherein the firm of Guggenheimer & Untermeyer was awarded compensation for 4,265 hours, of which 3,350 hours were attributed to the activities of partners and 915 hours to the work of associates.

47. The United Corporation, Holding Company Act Release No. 14047 (1959) p. 23.

noted with respect to the claim of Committee counsel is arbitrary, against the weight of the evidence and not in conformity with appropriate legal standards. Compensation will be awarded Tatham for his services during the entire course of the proceedings.

 The Commission allowance of $2,500 for 310 hours of services reflects an hourly rate of approximately $8. Tatham's services for the Committee were not restricted to his capacity as an expert but also included the handling of proxies, correspondence and discussions with the holders of warrants. Compensation across the board at the hourly rate commensurate with the rendition of services of a financial expert would not be warranted in view of the many facets of Tatham's performance. The composite rate of $8 per hour with respect to the sum total of the services rendered by Tatham is a fair hourly figure. Accordingly, $4,800 (600 hours x $8) is deemed a fair award for Tatham's activities.

### Berlack, Israels and Liberman

The firm of Berlack, Israels and Liberman requests a fee of $6,000 for services totaling 613 hours and reimbursement of expenses of $920.85. This firm represented Herbert M. Diamond and certain other holders of option warrants of United in opposing cancellation. The separate representation of Diamond and others commenced after reversal by the Supreme Court on jurisdictional grounds. Prior to the retention of Berlack, Diamond had given his proxy to the Committee.

The Commission after stating that the firm participated solely in the "second round of the litigation" denied Berlack's application for the same reasons enunciated with respect to the rejection of Committee counsel's claim.[48] United suggests additional reasons for disallowance of the Berlack application, namely, (1) the services of Berlack duplicated the performance of Committee counsel;

and (2), Berlack represented individuals not a validly organized Committee and thus, should be denied services since no substantial benefit accrued by virtue of Berlack's contribution.[49]

 United is correct in its statement of the law. Thus, a finding substantiated by the record of either (1) duplication, or (2), lack of contribution to the development of the plan, the progress of the proceedings, or the welfare of the estate, would be sufficient to deny Berlack compensation. The Commission did not make the denoted findings, notwithstanding, that the issues were presented on several different occasions.

The Proposed Findings And Conclusions Of The Division Of Corporate Regulation at page 79 state:

" * * * In fact, the Commission has held that representatives of individual security holders are not entitled to compensation for participation in Section 11 reorganizations unless 'the claimant has shown to have materially contributed to the development of the plan, the progress of the proceedings or the welfare of the estate;' or, unless 'assured that a demonstrable and substantial benefit to the proceedings or the plan has resulted from their participation.' Further, a comparison of Israels' several contentions before the Commission and the courts with those of the Committee indicates that, although presented in different form and context from those advocated by the Committee, they cover, in large part, the same substantive matters. Nor were his contentions of such significance as to require particular comment by the Commission or the courts. For the foregoing reasons while the claims are modest in amount the application will be denied."

Commissioner Sargent in his dissent raised the precise matters although his

---

48. Id., at 25.

49. Oral Argument, March 15, 1960, p. 81.

conclusions differed with those of the Division of Corporate Regulation:[50]

"* * * In any event, those interested in the rights of the option warrant holders made a definite contribution to the ultimate plan.

\* \* \* \* \* \*

"While Berlack, Israels & Liberman did not get into the proceedings until June 1951, * * * it nevertheless presented an argument and a brief to the Commission in support of the Committee's unsuccessful application to reopen the record, as well as to the District Court and on appeal to the Court of Appeals. Essentially, the attorneys' positions differed one from the other, in that the Committee counsel argued on the jurisdictional basis while the Israels firm stressed the valuation issue."

Finally, the Commission in its supplemental findings was similarly afforded the opportunity to find as United now proposes, but the Commission again avoided the issue, treating the representatives of the warrant holders without distinction as to the interests represented.[51] After stating, "Our denial of an allowance to the firm [Berlack, Israels & Liberman] was based on the ground that it would not be fair to the stockholders of United to require United to compensate representatives of the warrant holders for their unsuccessful activities at that state of the litigation on the plan," [52] the Commission concluded: [53]

"Our decision denying compensation for the activities of representatives of the warrant holders in the later stages of litigation on the plan

was based on the proposition, as stated in our findings and opinion of September 30, 1959, at p. 22, that 'The policy which justifies charging the reorganization estate with the costs of litigation relating to the merits of a plan was substantially satisfied after the committee had unsuccessfully presented its contentions to the Court of Appeals for the District of Columbia and petitioned the Supreme Court for certiorari on the merits.' The warrant holders were, of course, free to pursue the jurisdictional issue by way of petition for certiorari and to engage in further litigation upon success on the jurisdictional point. But, in our view, they may not charge United for the cost of gaining the right to, and engaging upon, this additional and extensive litigation."

█ The Commission has thus made it abundantly clear that the representatives of the warrant holders are to be considered alike. The question is simply whether or not counsel for the warrant holders are entitled to compensation for the later stages of the proceedings. With respect to counsel for the Committee, this court has held the Commission erred in withholding compensation. In view of the Commission rejection of Berlack's claim, for the same reasons it denied Committee counsel recovery, the holding of the Commission pertaining to the Berlack application must likewise be deemed erroneous.

█ A reviewing court, in considering the determination of an administrative body must evaluate the propriety of such action solely by the grounds invoked by the agency.[54] The reasons stated by

50. The United Corporation, Holding Company Act Release No. 14047 (1959), pp. 29, 30.

51. The United Corporation, Holding Company Act Release No. 14110, Dec. 7, 1959.

52. Id., at 3.

53. Id., at 4.

54. "The SEC wrote a new opinion avoiding reliance on the equity decisions, and

the case came to the Supreme Court again. [S.E.C. v. Chenery Corp., 1947, 332 U.S. 194, 67 S.Ct. 1575, 1760, 91 L.Ed. 1995]. The Court then said that the first case had emphasized 'a simple but fundamental rule of administrative law. That rule is to the effect that a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such

the Commission in denying Berlack's application are arbitrary, against the weight of the evidence, and not in conformity with appropriate legal standards.

 No authority has been cited which would permit the court to find as urged by United. To substitute this court's conclusions for those of the Commission would impinge upon the workings of the agency. It is not the function of a reviewing tribunal to supply findings that the agency has deliberately refused to make. Especially is this appropriate where no exception to the Commission refusal has been noted.[55]

 Under the present circumstances there is no need to refer this matter to the Commission for further proceedings. Ample opportunity has been afforded the Commission to rule on these issues. The deliberative statements of the Commission disclose that it chose to consider representatives of the warrant holders as a class. The Commission did not desire to weigh the efforts of the various counsel. The Commission's determination persuasively suggests an all or nothing ratio. Either the representatives of the warrant holders performed

compensable services or they did not. The Commission scrupulously avoided indulging in an evaluation of counsel's respective contributions.

To send this back to the Commission for a specific ruling on these issues would result in an unwarranted economic burden to Berlack.[56] These matters were appropriately presented to the Commission on numerous occasions. As Judge Kalodner observed in another phase of these proceedings, at some point in time the Gordian knot must be severed.[57] United cannot now complain since it was content to rely on the Commission's proffered reasons.

 Berlack's services were principally performed in this court and the Court of Appeals for the Third Circuit. Thus as Chief Judge Leahy in the Engineers Public Service Co. case observed, "this court is plainly in a position to evaluate the worth of these services just as well as the SEC."[58] Contrary to the submission of United the record amply supports the findings of Chairman Gadsby and Commissioner Sargent pertaining to their conclusion that Berlack performed compensable services.[59] Berlack's efforts did not duplicate those of Committee counsel.[60] Further, in conformity

action solely by the grounds invoked by the agency. If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis * * *. If the administrative action is to be tested by the basis upon which it purports to rest, that basis must be set forth with such clarity as to be understandable. It will not do for a court to be compelled to guess at the theory underlying the agency's action * * *.' " 2 Davis Administrative Law Treatise, Section 16.12, p. 483 (1958).

55. "As will be shown below, United opposed before the Commission the claims made by all but its own representatives. This opposition was based in some cases upon the amounts claimed, and in other cases upon the right to be paid any amount by United. The Commission did not adopt fully in each case the objections raised by United. However, United is not disposed to press those objec-

tions further, but rather is prepared to make the payments approved by the Commission if the Supplemental Application for enforcement is fully granted. On that basis, United supports the Commission's Supplemental Application now before the court." Memorandum Of The United Corporation In Support Of Supplemental Application, p. 3.

56. Note 35, supra.

57. In re United Corporation, 3 Cir., 1957, 249 F.2d 168, 183.

58. Note 34, supra [116 F.Supp. 946].

59. The United Corporation, Holding Company Act Release No. 14047 (1959).

60. "Whatever merit of the 'time necessarily expended' standard is, as to which I have doubt, I cannot find substantial evidence to support the Commission's findings 'the time expended appears excessive' or the finding, 'it appears that their work involved duplication of effort'. Careful use of the word 'appears'

with appropriate legal standards the services rendered conferred "a benefit" upon the United estate.[61]

The firm seeks compensation for services rendered before the Commission in support of the petition for rehearing, in the District Court enforcement proceedings, and in the Court of Appeals for the Third Circuit. After the Court of Appeals for the Third Circuit adverse ruling the firm did not petition the Supreme Court for certiorari. Berlack spent 613 hours on these proceedings of which 298 hours are attributed to the activities of partners, and 315 to the work of associates. For these services the firm seeks $6,000, an hourly rate of less than $10, plus expenses of $920.85. The Court acquiesces in the observation of the Division of Corporate Regulation that the "claims are modest in amount." [62] Accordingly, Berlack's objections to the Commission's Findings and Conclusions are sustained and the application for $6,000, plus expenses, is granted.

Submit order.

in both instances reveals the Commission's awareness it is only speculating on this score. As I suggested in a prior opinion, the sematics of such loose words as 'duplicative' and 'unproductive' cannot be allowed to brush aside contributive worth of the varying services of the attorney. A charge of duplication without further explanation tells me nothing. The 'duplicative' epithet does not advance SEC's contentions." In re Engineers Public Service Co., D.C.D.Del.1953, 116 F.Supp. 930, 942–943. (Emphasis supplied.)
Note 50, supra.

61. Notes 33, 50, supra.
"Unquestionably, award of compensation for services in connection with reorganizations under the Public Utility Holding Company Act of 1935 has been guided by Chapter X practices.
"Collier, on Bankruptcy, in speaking of compensable services under Chapter X proceedings, states:
" 'Activities relating to the reorganization plan are specifically provided for in § 242. Allowances may be made thereunder for services rendered and proper expenses incurred "in connection with a plan approved by the judge, whether or not accepted by creditors and stockholders or finally confirmed by the judge." Here again, however, no allowance will be made unless the services or costs have resulted in some "benefit to the estate." Nevertheless, one thing should be clearly understood, and that is that activities, in opposition to a plan, whether they are unsuccessful or successful, may be entitled to an allowance just as well as activities in support of the plan.'[25]
In sum, Collier states: 'The intent of the draftsmen of Chapter X seems generally to have been to authorize an allowance for creditable opposition whether successful or unsuccessful.' The ratio

behind this position is justice and a fair interpretation of the statute demanding moderate allowances for all parties who have a proper part in any particular reorganization.
"Under the authorities, I conclude benefit has been conferred upon the estate within the purview of the Act. * * *
" * * * I cannot find as a fact the then management of Engineers constituted an omniscient body whose opinion should have been accepted as being the last word as to common shareholders' rights—especially when management reversed itself for reasons of expediency to acquiesce in the views of SEC. * * * Counsel representing common shareholders should not be likened to a species of entrepreneur in salvage operations, who, as in salvage at sea, is not to receive compensation unless it rescues and delivered at dockside the derelict vessel and its cargo. * * *" In re Engineers Public Service Co., D.C.D.Del. 1953, 116 F.Supp. 930, 937–938, 938–939.
Footnote 25.
"6 Collier on Bankruptcy, 14th ed., p. 4537, and at pp. 4507–8:
" 'In addition, activities which benefit the estate are not to be restricted merely to those which relate to the successful consummation of a phase, as was largely the case under § 77B. Activities relating to opposition to a plan, e'ther successful or unsuccessful, are—entitled to an allowance under Chapter X. This serves to insure the vigorous representation of all security holders the protection of minority groups.' "

62. "For the foregoing reasons, while the [Berlack] claims are modest in amount, the application will be denied." Proposed Findings And Conclusions Of The Division Of Corporate Regulation, Dec. 29, 1958, p. 80.